Collin A. PYRON *v.* STATE of Arkansas

CR 97-499                                           953 S.W.2d 874

Supreme Court of Arkansas
Opinion delivered October 2, 1997
[Petition for rehearing denied November 6, 1997.]

*Mashburn & Taylor,* by: *Scott E. Smith,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Kent G. Holt,* Asst. Att'y Gen., for appellee.

RAY THORNTON, Justice. Collin Andrew Pyron, appellant, was arrested by the Fayetteville Police Department on July 19, 1996, and charged with driving while intoxicated and refusal to submit to a chemical analysis. On August 20, his driver's license was suspended by the Office of Driver Services for 120 days on

the basis of his arrest for the DWI and for 180 days for his refusal to submit to chemical analysis. He was convicted in Fayetteville Municipal Court for both offenses on October 2, 1996, and appealed to Washington County Circuit Court.

In circuit court, he filed a motion to dismiss, alleging that the prosecution violates the Double Jeopardy Clause of the United States Constitution. He argued that the length of the administrative suspension of his license for 180 days, "rises to the level of punishment due to its retributive and deterrent effect." The trial court found that because the suspension was that of a privilege, not a right, to operate a motor vehicle, the Double Jeopardy Clause was not violated by his trial and subsequent conviction on criminal charges. We agree.

Both the United States and Arkansas Constitutions provide that no person shall be subjected to two punishments based on the same offense. However, remedial civil sanctions may be properly imposed without placing the person in jeopardy. As the Supreme Court stated long ago in *Helvering v. Mitchell*, 303 U.S. 391 (1938): "Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege temporarily granted."

In *Sims v. State*, 326 Ark. 296, 930 S.W.2d 381 (1996), we articulated a standard for determining whether a civil forfeiture is "punishment" for double jeopardy purposes, and we hold that this standard pertains to the suspension provision. The test first asks whether the legislature intended for the statute to be a remedial civil sanction or a criminal penalty. Second, it asks whether the administrative proceedings are so punitive in nature as to establish that they may not legitimately be viewed as civil in nature, "despite any legislative intent to establish a civil remedial mechanism." *Id.* at 298, 930 S.W.2d at 382 (citing *United States v. Ursery*, 116 S. Ct. 2135 (1996)).

With regard to the first prong of this test, we note that Ark. Code Ann. § 5-65-104 (Supp. 1995) states:

> The administrative suspension or revocation of a driver's license as provided for by this section shall be supplementary to and in

> addition to the suspensions or revocations of driver licenses
> which are ordered by a court of competent jurisdiction [.]

*Id.* § 5-65-104(f).

We also note that the standard for administrative license suspension established by section 5-65-104(a)(8) is based on the civil standard of proof by a preponderance of the evidence. This is, of course, a lower standard than that required by a criminal conviction, which is beyond a reasonable doubt.

The purpose for the sanctions is to prevent drunk driving, as stated in the Emergency Clause, as follows: "the act of driving a motor vehicle while under the influence of intoxicating alcoholic beverages or drugs constitutes a serious and immediate threat to the safety of all citizens of this State . . . ." Act 549 of 1983, § 19 (emergency clause).

■ Additionally, the proceedings for imposition of the sanctions are conducted by the executive branch of government, and not the judiciary. It is clear that the legislative intent was to provide remedial civil sanctions.

We next consider the language and application of the statute. Arkansas Code Annotated § 5-65-104(a)(4)(A)(iii) provides:

> (a)(4) The Office of Driver Services of the Revenue Division of the Department of Finance and Administration or its designated official shall suspend or revoke the driving privilege of an arrested person or shall suspend any nonresident driving privilege of an arrested person when it receives a sworn report from the law enforcement officer that he had reasonable grounds to believe the arrested person had been operating or was in actual physical control of a motor vehicle while intoxicated or while there was one-tenth of one percent (0.1%) or more by weight of alcohol in the person's blood, § 5-65-103, which is accompanied by a written chemical test report reflecting that the arrested person was intoxicated or had an alcohol concentration of one-tenth of one percent (0.1%) or more, or is accompanied by a sworn report that the arrested person refused to submit to a chemical test of blood, breath, or urine for the purpose of determining the alcohol or controlled substance contents of the person's blood, as provided in § 5-65-202. The suspension or revocation shall be based on the number of previous offenses as follows:

(A)(iii) Suspension for one hundred eighty (180) days for the first offense of refusing to submit to a chemical test of blood, breath, or urine for the purpose of determining the alcohol or controlled substance contents of the person's blood, § 5-65-202 [.]

The interpretation of this statute is a question of first impression for this court. Appellant argues that the statute imposes "multiple punishments" and that it fails the second prong of the test articulated in *Sims*. We do not find that the penalty "is so divorced from any remedial goal that it constitutes 'punishment' [under] double jeopardy analysis." *United States v. Halper*, 490 U.S. 435, 443 (1989). We hold that the temporary revocation of the privilege of driving for refusal to submit to a chemical analysis is rationally related to the purpose of the statute, which is to protect the public from intoxicated drivers and to reduce alcohol-related accidents.

Further, we note that in order to relieve any extraordinary hardship that might occur by an administrative license suspension, the legislature enacted provisions to allow those with no alternate means of commuting to and from work to apply for a restricted driving permit. Arkansas Code Annotated § 5-65-120 (Supp. 1995) provides in pertinent part:

(a) On July 1, 1996, and thereafter, the Office of Driver Services or its designated agent, following the administrative hearing for suspension or revocation of a driver's license as provided for in § 5-65-104, or upon the request of the person whose privilege to drive has been denied or suspended, may modify the denial or suspension in cases of extreme and unusual hardship by the issuance of a restricted driving permit when it is determined by the Office of Driver Services or its agent that no other adequate means of transportation exists for that person to allow driving in any or all of the following situations:

(1) To and from his or her place of employment; or

(2) In the course of his or her employment; or

(3) To and from an educational institution for the purpose of attending classes if the person is enrolled and regularly attending classes at the institution; or

(4) To and from the alcohol safety education and treatment course for drunk drivers.

This provision rebuts any argument concerning the punitive effect of the sanction upon a person whose license has been suspended, as a result of which his ability to maintain his means of livelihood is impaired. It is a further reflection of the legislative intent to establish a remedial civil sanction for the purpose of protecting the public from intoxicated drivers and to reduce alcohol-related accidents while softening the sanctions in order to allow the person to continue to operate a vehicle for appropriate purposes.

In summary, we do not find that the statute violates the constitutional prohibition on double jeopardy by imposing multiple punishments for the same offense. The judgment of the trial court is affirmed.

Affirmed.