GEORGE WAGONER FERGUSON, JR., PETITIONER v. ALEXANDER KILLENS, COMMISSIONER OF THE DIVISION OF MOTOR VEHICLES OF THE STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, RESPONDENT

No. COA97-18

(Filed 7 April 1998)

1. **Automobiles and Other Vehicles § 92 (NCI4th)— driver's license revocation—willful refusal of chemical test—superior court review—findings**

The evidence supported the trial court's findings in a driver's license revocation proceeding based on allegations of drunken driving and a willful refusal of a chemical test; a finding that petitioner had responded that he understood his rights was not inconsistent with a finding that his rights were read so rapidly that they were difficult to understand. It is immaterial that the evidence may support a finding not made by the superior court.

**2. Automobiles and Other Vehicles § 92 (NCI4th)— driver's license revocation—superior court review—issues raised in petition—jurisdiction**

A petition seeking rescission of a driver's license revocation alleged facts sufficient to invoke the superior court's declaratory judgment jurisdiction under N.C.G.S. § 1-253 and issues raised by petitioner other than the five listed in N.C.G.S. § 20-16.2(d) were properly before the court. When a petitioner whose driver's license has been revoked under N.C.G.S. § 20-16.2(c) petitions the superior court for a de novo review and the petition raises only the five issues listed in N.C.G.S. § 20-16.2(d), then the court's review is limited to a consideration of those five issues. If the petition argues for rescission of the license revocation by raising other issues, then the superior court has jurisdiction to resolve those pursuant to the declaratory judgment statute. The petition need not cite N.C.G.S. § 1-253.

**3. Constitutional Law § 186 (NCI4th)— double jeopardy— impaired driving—willful refusal of chemical test**

The revocation of petitioner's driver's license for willful refusal of a chemical test when he had already been convicted of and punished for impaired driving did not violate double jeopardy because impaired driving and willful refusal of a chemical test are not remotely the same offense. Although petitioner argues that the willful refusal was an incident of the impaired driving, the fact that his willful refusal and impaired driving were logically connected, without more, is of no consequence to the double jeopardy inquiry.

**4. Constitutional Law § 89 (NCI4th)— equal protection— driver's license revocation—willful refusal of chemical test—rationally related to legitimate goal**

Petitioner was not denied equal protection of the laws when his driver's license was revoked for the willful refusal of a chemical test even though he argued that the statutes effectively place motorists into two categories and only those who willfully refuse the test are subject to a one-year license revocation. The penalty of license revocation for willful refusal of a chemical test is rationally related to furthering the legitimate goal of public safety.

FERGUSON v. KILLENS

[129 N.C. App. 131 (1998)]

**5. Automobiles and Other Vehicles § 92 (NCI4th)— license revocation—willful refusal of chemical test—notice 99 days after refusal—no prejudice**

The trial court did not err by not rescinding a driver's license revocation which had been based on willful refusal of a chemical test where DMV's notice of the pending revocation was dated ninety-nine days after the willful refusal occurred. Even assuming that petitioner was not "expeditiously notified," as required by N.C.G.S. § 20-16.2(d), petitioner made no showing that he was prejudiced. Additionally, none of the conditions for license revocation in N.C.G.S. § 20-16.2(d) has anything to do with expeditious notice.

**6. Judgments § 208 (NCI4th)— collateral estoppel—willful refusal of chemical test—impaired driving—independent offense**

The doctrine of collateral estoppel did not apply to a driver's license revocation for refusal of a chemical test where petitioner argued that the district attorney in the impaired driving trial and the Attorney General in the revocation proceeding were in privity with each other. The elements of impaired driving may be established without any determination that the driver willfully refused a chemical test.

**7. Automobiles and Other Vehicles § 92 (NCI4th)— driver's license revocation—willful refusal of chemical test—hospital blood test used for impaired driving conviction**

The trial court did not err by not rescinding a driver's license revocation where the State also secured an impaired driving conviction using petitioner's hospital blood test and his willful refusal to submit to a blood test by the police. Although defendant argued that revoking his license would be contrary to the intent of the legislature under these circumstances, he cites no authority to support his position.

Appeal by petitioner from orders entered 2 January 1996 and 9 July 1996 by Judge John Mull Gardner, Jr. in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 September 1997.

*Eugene C. Hicks, III, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General T. Lane Mallonee, for respondent-appellee.*

FERGUSON v. KILLENS

[129 N.C. App. 131 (1998)]

LEWIS, Judge.

Petitioner appeals from two superior court orders sustaining the revocation of his license by the North Carolina Division of Motor Vehicles (DMV). We affirm.

On 14 February 1995, Officer T.J. Kwasnik of the Charlotte-Mecklenburg Police Department arrived at the scene of an accident involving a school bus and a Cadillac. Kwasnik found petitioner seated in the Cadillac and being attended by medics. Kwasnik approached petitioner and noticed a strong odor of alcohol about his person. Several people at the scene told Kwasnik that petitioner was driving the Cadillac when it hit the bus. Petitioner was taken to Carolinas Medical Center and Kwasnik followed him there to interview him.

When petitioner arrived at the hospital, blood samples were drawn and tested for alcohol concentration in accordance with the hospital's routine practice for people involved in motor vehicle accidents. The test revealed an alcohol concentration of 0.33. When Officer Kwasnik arrived, petitioner stated that he had hit the school bus but that "they" could not prove he had been driving. Kwasnik charged petitioner with impaired driving.

Deputy K.E. Biltcliffe of the Mecklenburg County Sheriff's Department was summoned to act as chemical analyst in petitioner's case. Biltcliffe informed petitioner both orally and in writing of his rights as listed in North Carolina General Statute section 20-16.2(a) (1993). Biltcliffe asked petitioner if he understood his rights and petitioner stated that he did. Biltcliffe asked petitioner if he wanted to call an attorney or have a witness present but petitioner said "No."

Officer Kwasnik then asked petitioner to submit to a blood test. Petitioner refused. At the time of this request, neither Kwasnik nor Deputy Biltcliffe knew that the hospital had already taken blood from petitioner for testing. Petitioner's license was immediately revoked for ten days for willfully refusing to take the blood test. *See* N.C. Gen. Stat. § 20-16.5 (1993). Petitioner does not contest this ten-day revocation.

By letter dated 24 May 1995, respondent notified petitioner that his license was to be suspended for an additional year for willful refusal pursuant to N.C. Gen. Stat. § 20-16.2(c). Petitioner requested an administrative review by a DMV hearing officer. The hearing officer sustained the revocation and petitioner filed for a de novo hear-

ing in superior court. While that appeal was pending, petitioner was convicted of impaired driving as charged. On 29 November 1995 the superior court conducted a de novo hearing on the one-year suspension and upheld the DMV order. Petitioner was granted a rehearing, but the suspension was again sustained. Petitioner appeals.

Petitioner has abandoned assignment of error five by failing to argue it in his brief. N.C.R. App. P. 28.

[1] Petitioner first assigns error to several findings of fact by the superior court. The superior court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence also supports findings to the contrary. *Nowell v. Killens*, 119 N.C. App. 567, 569, 459 S.E.2d 37, 38 (1995).

Petitioner argues that the evidence did not support the following findings of fact: (1) that neither Officer Kwasnik nor Deputy Biltcliffe knew that petitioner's blood had already been tested by hospital personnel when petitioner was asked to take the blood test; (2) that Biltcliffe gave petitioner oral and written notice of his rights as listed in G.S. 20-16.2(a); and (3) that petitioner responded that he understood his rights. The testimony of Kwasnik and Biltcliffe supports all of these findings and they are therefore binding on appeal. Moreover, finding number (3) is not inconsistent with the superior court's finding that petitioner was read his rights so rapidly that it was difficult to understand what was being said. The court found that it was difficult, not impossible, to understand what was being said.

Petitioner challenges one other finding by the superior court: that petitioner was read his 20-16.2(a) rights before he was asked to submit to a blood test. Petitioner argues that the affidavits completed by Kwasnik and Biltcliffe on the day of the accident indicate that he was asked to take the test before he was read his rights.

It is immaterial that the evidence may support a finding not made by the superior court. Our review is limited to whether competent evidence supports the findings that were made. The sworn testimony of Officer Kwasnik and Deputy Biltcliffe at the hearing supports the finding as to when petitioner was read his rights. All assignments of error pertaining to the superior court's findings of fact are overruled.

[2] Before we discuss the remaining assignments of error regarding the superior court's conclusions of law, we find it worthwhile to summarize the relevant portions of the statute central to this appeal, North Carolina General Statutes section 20-16.2 (1993). This opinion

**FERGUSON v. KILLENS**

[129 N.C. App. 131 (1998)]

refers only to the version of 20-16.2 in effect on the date of the offense.

Anyone who operates a vehicle on a highway or public vehicular area consents to a chemical analysis if charged with an "implied-consent offense," including impaired driving. G.S. 20-16.2(a), (a1). "The charging officer must designate the type of chemical analysis to be administered, and it may be administered when the officer has reasonable grounds to believe that the person charged has committed the implied-consent offense." G.S. 20-16.2(a). Before the test is administered, a chemical analyst who is authorized to administer a breath test must give the person charged oral and written notice of his rights as enumerated in G.S. 20-16.2(a), including his right to refuse to be tested. *Id.*

Subsection (c) provides in part,

If the person charged willfully refuses to submit to [the designated] chemical analysis, none may be given under the provisions of this section . . . . Then the charging officer and the chemical analyst must without unnecessary delay go before an official authorized to administer oaths and execute an affidavit stating that the person charged, after being advised of his rights under subsection (a), willfully refused to submit to a chemical analysis at the request of the charging officer. The charging officer must immediately mail the affidavit to the Division [of Motor Vehicles].

G.S. 20-16.2(c). Subsection (d) states in part,

Upon receipt of a properly executed affidavit required by subsection (c), the Division must expeditiously notify the person charged that his license to drive is revoked for 12 months, effective on the tenth calendar day after the mailing of the revocation order unless, before the effective date of the order, the person requests in writing a hearing before the Division. . . . *The hearing . . . must be limited to consideration of whether*:

(1) The person was charged with an implied-consent offense;

(2) The charging officer had reasonable grounds to believe that the person had committed an implied-consent offense;

(3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;

(4) The person was notified of his rights as required by subsection (a); and

(5) The person willfully refused to submit to a chemical analysis upon the request of the charging officer.

If the Division finds that the conditions specified in this subsection are met, it must order the revocation sustained. If the Division finds that any of the conditions (1), (2), (4), or (5) is met, it must rescind the revocation.

G.S. 20-16.2(d) (emphasis added). Subsection (e) provides in part,

If the revocation is sustained after the hearing, the person whose license has been revoked has the right to file a petition in the superior court for a hearing de novo *upon the issues listed in subsection (d)*, in the same manner and under the same conditions as provided in G.S. 20-25 . . . .

G.S. 20-16.2(e) (emphasis added). Finally, General Statute section 20-25 (1993) provides in relevant part,

Any person . . . whose license has been . . . revoked by the Division . . . shall have a right to file a petition within 30 days thereafter for a hearing in the matter in the superior court[,] . . . and such court . . . is hereby vested with jurisdiction and it shall be its . . . duty . . . to determine whether the petitioner is entitled to a license or is subject to . . . revocation of license under the provisions of this Article.

At his de novo hearing, petitioner argued for the rescission of his license revocation by raising issues not listed in G.S. 20-16.2(d). The superior court held that its review of a G.S. 20-16.2 license revocation was limited to the five issues listed in G.S. 20-16.2(d), and therefore any issues other than these five were not properly before it. Nevertheless, the superior court proceeded to rule upon petitioner's alternative grounds for relief to the extent they were properly before the court.

Our initial task, then, is to determine what issues the superior court may rule on when it reviews a DMV license revocation pursuant to G.S. 20-16.2(e). By statute, DMV's administrative review of a license revocation under G.S. 20-16.2 "*must* be limited" to a consideration of the five issues listed in G.S. 20-16.2(d). N.C. Gen. Stat. § 20-16.2(d) (emphasis added). If a DMV hearing officer sustains the revocation, petitioner may file for a de novo hearing in superior court.

N.C. Gen. Stat. § 20-16.2(e). The superior court de novo hearing is to be *"upon the issues listed in subsection (d)"* of G.S. 20-16.2 and "in the same manner and under the same conditions as provided in G.S. 20-25." *Id.* (emphasis added). Reading these provisions *in pari materia,* we believe that G.S. 20-16.2(e) means this: When one whose license has been revoked under G.S. 20-16.2(c) petitions the superior court for a de novo review, and the petition raises only the five issues listed in G.S. 20-16.2(d), then the court's review is limited to a consideration of those five issues. General Statute section 20-16.2(e) states that the court's hearing is to be "upon the issues listed in subsection (d)," and only five issues are listed therein.

If, however, the petition argues for rescission of the license revocation by raising issues *other* than the five issues listed in G.S. 20-16.2(d), then the superior court has jurisdiction to resolve those issues pursuant to our declaratory judgment statute, N.C. Gen. Stat. § 1-253 (1996).

> A declaratory judgment may be used to determine the construction and validity of a statute. . . . Denials of property rights or fundamental human rights, in violation of constitutional guarantees, also may be challenged in a declaratory judgment action where a specific provision of a statute is challenged by a person directly and adversely affected thereby.

*Town of Emerald Isle v. State of N.C.,* 320 N.C. 640, 646, 360 S.E.2d 756, 760 (1987) (citation omitted). The petition need not cite G.S. 1-253 to invoke the court's authority to issue a declaratory judgment, although an explicit reference to the statute would help to avoid confusion. In any event, it is "the facts alleged [which] determine the nature of the relief to be granted." *Langdon v. Hurdle,* 15 N.C. App. 158, 161, 189 S.E.2d 517, 519 (1972). Moreover, all pleadings shall be construed to do substantial justice. N.C.R. Civ. P. 8(f).

In this case, the amended petition and related motion for relief ask the superior court to rescind petitioner's license revocation on various grounds not listed in G.S. 20-16.2(d). Essentially, petitioner asked the superior court to declare that DMV has no right to revoke his license and to enjoin DMV to rescind the revocation of his license. We hold that petitioner alleged facts sufficient to invoke the superior court's declaratory judgment jurisdiction under G.S. 1-253, and that the issues raised by petitioner other than the five listed in G.S. 20-16.2(d) were properly before the court. We now turn to those issues.

FERGUSON v. KILLENS

[129 N.C. App. 131 (1998)]

**[3]** Petitioner first argues that because he has already been convicted of and punished for impaired driving, the revocation of his license for willful refusal of a chemical test under G.S. 20-16.2 violates the Double Jeopardy Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution.

The Double Jeopardy Clause states that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Law of the Land Clause affords similar protection. *See* N.C. Const. art. I, § 19. The Double Jeopardy Clause protects against "the imposition of multiple criminal punishments for the same offense, . . . and then only when such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, ——, 139 L. Ed. 2d 450, 458-59 (1997) (citations omitted). Two offenses are not the same for Double Jeopardy purposes if each contains an element that is absent from the other. *United States v. Dixon*, 509 U.S. 688, 696, 125 L. Ed. 2d 556, 568 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306 (1932)).

We need not delve into petitioner's dubious proposition that the revocation of his license for refusing a chemical test was criminal punishment. *See Hudson, supra; State v. Oliver*, 343 N.C. 202, 470 S.E.2d 16 (1996); *Joyner v. Garrett, Comr. of Motor Vehicles*, 279 N.C. 226, 182 S.E.2d 553 (1971). Instead, we reject petitioner's Double Jeopardy argument because impaired driving and willful refusal of a chemical test are not remotely the same offense.

A person commits the offense of impaired driving if he operates a vehicle upon a public vehicular area (1) while under the influence of an impairing substance, or (2) after having consumed sufficient alcohol as to produce a blood alcohol concentration of 0.08 or more at any relevant time after the driving. N.C. Gen. Stat. § 20-138.1 (1993). A person willfully refuses a chemical test under G.S. 20-16.2(a) if he:

> (1) is aware that he has a choice to take or to refuse to take the test; (2) is aware of the time limit within which he must take the test; (3) voluntarily elects not to take the test; and (4) knowingly permits the prescribed thirty-minute time limit to expire before he elects to take the test.

*Etheridge v. Peters, Comr. of Motor Vehicles*, 301 N.C. 76, 81, 269 S.E.2d 133, 136 (1980). The offenses of impaired driving and willful refusal of a chemical test each contain elements not required in the other. Indeed, these offenses share no common elements. They are

not, therefore, the same offense, and the Double Jeopardy Clause does not bar the revocation of petitioner's license.

Petitioner points out that he could only have willfully refused a chemical test if he was first charged with impaired driving. He argues that revoking his license for willful refusal after he has been prosecuted for impaired driving violates the Double Jeopardy Clause, because the refusal was an "incident" of the impaired driving. Petitioner bases his argument on the following dictum from *In re Nielsen*, 131 U.S. 176, 188, 33 L. Ed. 118, 122 (1889): "[W]here, as in this case, a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence."

However, the Supreme Court has recently stated that the word "incident" as used in this passage means "element," and not related conduct or a related event. *Dixon*, 509 U.S. at 705, 125 L. Ed. 2d at 574, fn. 10. The *Nielsen* passage means only that prosecution for a crime whose elements contain a lesser included offense bars prosecution for the lesser included offense. *Id.* Therefore, the fact that petitioner's willful refusal and impaired driving were logically connected to one another, without more, is of no consequence to the Double Jeopardy inquiry. Petitioner's Double Jeopardy argument is overruled.

**[4]** Petitioner next argues that the statutes providing for license revocation upon willful refusal deny him equal protection of the laws. *See* U.S. Const. amend. XIV ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."); N.C. Const. art. I, § 19 ("No person shall be denied the equal protection of the laws . . . ."). The statutes effectively place motorists charged with impaired driving (or other implied-consent offenses) into two categories: those who submit to a chemical test and those who willfully refuse. Only those motorists who willfully refuse the test are subject to a one-year license revocation for their refusal. Petitioner argues that the General Assembly could have no rational basis for this disparate treatment. We disagree.

Petitioner does not contend that persons who are arrested for implied consent offenses and willfully refuse a chemical test are a suspect class, or that the right to drive is a fundamental right. Therefore, our analysis mirrors that of our Supreme Court in *Henry v. Edmisten*, 315 N.C. 474, 340 S.E.2d 720 (1986): "[D]istinctions

which are drawn by a challenged statute or action [must] bear some rational relationship to a conceivable legitimate government interest." *Id.* at 497, 340 S.E.2d at 735 (quoting *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 11, 269 S.E.2d 142, 149 (1980)).

General Statute section 20-16.2(a) provides that when a person is charged with impaired driving, he must be notified that his refusal to take a chemical test will result in the revocation of his license for a year and ten days. The threat of revocation encourages submission to the test and may provide the State or the defendant with additional evidence of guilt or innocence. This evidence assists the State in its enforcement of the impaired driving statutes and furthers the goal of public safety. We hold that the penalty of license revocation for willful refusal of a chemical test is rationally related to furthering the legitimate goal of public safety. Petitioner was not denied equal protection of the laws.

[5] Petitioner next argues that because DMV did not "expeditiously notify" him of his one-year license revocation as required by G.S. 20-16.2(d), the revocation must be rescinded. The letter notifying plaintiff of his pending license revocation was dated 24 May 1995, a full ninety-nine days after the willful refusal occurred. Even if we assume that petitioner was not "expeditiously notif[ied]" as required by the statute, petitioner has made no showing that his failure to be expeditiously notified has prejudiced him. In addition, G.S. 20-16.2(d) states that a license revocation for willful refusal must be sustained if the five conditions specified are met. None of these conditions has anything to do with "expeditious notice." Petitioner's argument fails.

[6] Petitioner next contends that the District Attorney in the impaired driving trial and the Attorney General in the revocation proceeding were in privity with each other. Therefore, petitioner argues, the Attorney General is collaterally estopped from relitigating the issue of willful refusal in the revocation proceeding.

"The doctrine of collateral estoppel provides that a party will be estopped from relitigating an issue where (1) the issue has been necessarily determined previously and (2) the parties to that prior action are identical to, or in privity with, the parties in the instant action." *State v. O'Rourke*, 114 N.C. App. 435, 439, 442 S.E.2d 137, 139 (1994).

As we noted above, the offense of impaired driving consists of driving a vehicle upon a public vehicular area (1) while under the influence of an impairing substance, or (2) after having consumed

sufficient alcohol as to produce a blood alcohol concentration of 0.08 or more at any relevant time after the driving. N.C. Gen. Stat. § 20-138.1 (1993). These elements may be established without any determination that the driver willfully refused a chemical test. Therefore, the doctrine of collateral estoppel does not apply to this case.

[7] Finally, petitioner points out that the State secured his impaired driving conviction by using evidence of his hospital blood test (showing a blood alcohol concentration of 0.33), and of his willful refusal to submit to a blood test by the police. Petitioner argues that under these unusual circumstances, where an impaired driving conviction was based on both blood test evidence and evidence of a refused blood test, to revoke his license for willful refusal would be contrary to the intent of the legislature. However, petitioner cites no authority to support this position, and we know of none. The relevant statutes and case law unambiguously support the result reached in this case.

Affirmed.

Judges JOHN and SMITH concur.