510 S.E.2d 215

STATE of South Carolina, Respondent,

v.

Franklin PRICE, III, Petitioner.

No. 24863.

Supreme Court of South Carolina.

Heard Oct. 6, 1998.

Decided Dec. 14, 1998.

268

Stephen Groves, Sr. and Stephen L. Brown, both of Young, Clement, Rivers & Tisdale, Charleston, and Reese I. Joye and John L. Drennan, both of the Joye Law Firm, North Charleston, for petitioner.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Charles H. Richardson, all of Columbia, and First Circuit Solicitor Walter M. Bailey, of Summerville, for respondent.

WALLER, Justice:

We granted certiorari to review the Court of Appeals' opinion in *State v. Price*, Op. No. 97–UP–145 (Feb. 20, 1997). We affirm.

## FACTS

On Sept. 5, 1994, at approximately 4:00 am, Price lost control of his vehicle on a road in Dorchester County and crashed into a private residence. When authorities arrived, they suspected Price had been drinking, and after conducting a number of field sobriety tests, Price was placed under arrest. He was taken to the Dorchester County jail, where he refused a breathalyzer test. Due to his refusal to take the test, Price's driver's license was suspended for ninety days.[1] Thereafter, the state prosecuted Price for Driving Under the Influence (DUI). He was convicted and sentenced to one year imprisonment, suspended on eighteen months probation, and a fine of $2000.00, and the requirement that he serve either thirty days incarceration or perform twenty days of public service.

Price appealed, contending *inter alia*, his prosecution for DUI was barred by double jeopardy, as he had already been punished by the ninety day suspension of his license. The Court of Appeals, citing *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), found no double

---

1. Pursuant to S.C.Code Ann. § 56–5–2950(d) (Supp.1997), if a person operating a vehicle in this state refuses to submit to a breathalyzer or other chemical test, none may be given, but the driver's license of the person refusing the test may be suspended for ninety days.

jeopardy violation, and affirmed the conviction. *State v. Price,* Op. No. 97–UP–145 (Ct.App. Feb. 20, 1997).

## ISSUE

Does the administrative suspension of Price's driver's license for refusal to submit to a breathalyzer test render his subsequent conviction for DUI violative of the Double Jeopardy Clause? [2]

## DISCUSSION

■ While double jeopardy usually operates to bar successive or multiple criminal prosecutions, it may also prevent the government from subjecting a defendant to both a criminal punishment and a civil sanction. *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938); *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

■ Recently, in *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997),[3] the United States Supreme Court set forth the framework within which to analyze a double jeopardy claim in the context of a civil sanction.[4] *Hudson* held the mere fact that a civil penalty has

---

2. S.C. CONST. art. I, § 12; U.S. CONST. Amend V. The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction, and against multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997).

3. *Hudson* was decided subsequent to the Court of Appeals' opinion in this case. *Hudson* abrogated the test set forth in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). *Halper* required a court, rather than assessing the statute on its face to determine the nature of the sanction imposed, to assess the character of the **actual** sentence imposed to determine if the sanction **as applied in the individual case** served the goals of punishment. 490 U.S. at 449, 109 S.Ct. at 1901–02.

4. Both this Court and the United States Supreme Court have held, in the context of **criminal** penalties, that the *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) "same elements" test is the sole test of double jeopardy in successive prosecutions, and multiple punishment cases. *United States v. Dixon,* 509 U.S. 688, 113 S.Ct.

some deterrent effect does not render it violative of the double jeopardy clause. "[I]f a sanction must be "solely" remedial to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." 118 S.Ct. at 495. Accordingly, under *Hudson,* a court looks at the face of a statute to determine if it establishes a criminal or civil penalty, and then determines if the statutory scheme is so punitive in purpose or effect as to transform what was intended as a civil sanction into a criminal penalty. Only the clearest proof will suffice to override legislative intent and transform what has been denominated as a civil remedy into a criminal penalty. *Id.*

■ Pursuant to *Hudson,* we find the administrative suspension of a driver's license for refusal to submit to a breatha-

---

2849, 125 L.Ed.2d 556 (1993); *State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997).

However, the United States Supreme Court has not, in the context of the civil sanction cases, applied *Blockburger* (notwithstanding Justice Stevens' concurrence in *Hudson* suggesting its application). In our view, under the majority's analysis in *Hudson,* if a sanction is determined to be civil in nature and has not been transformed into a criminal penalty, then the double jeopardy clause is not implicated and there is simply no need to conduct a *Blockburger* analysis. *Accord, United States v. Hudson,* 92 F.3d 1026, 1028, n. 3 (10th Cir.) (10th Circuit found it unnecessary to address whether offenses were the same under *Blockburger* since it found sanctions were not punishment); *Covelli v. Crystal* 1994 WL 722976 (Conn.Super.Tax 1994), *rev'd on other grounds,* 239 Conn. 257, 683 A.2d 737 (1996). *See also* Henning, *Precedents in a Vacuum: The Supreme Court Continues to Tinker with Double Jeopardy,* 31 Am.Crim.L.Rev. 1, 48 (1993) (Because *Halper* [and *Hudson* ] analysis depend on reaching a conclusion of when a sanction passes from civil to criminal, *Blockburger* plays no significant role in this area).

However, once a sanction is determined to constitute a criminal penalty, we find the *Blockburger* "same elements" test would apply. In light of our holding that the current sanction is civil in nature, we need not apply a *Blockburger* analysis to the present case. *But see State v. Kerr,* 330 S.C. 132, 498 S.E.2d 212 (Ct.App.1998) (holding offenses of license suspension for failure to submit to the breathalyzer under § 56–5–2950, and DUI under § 56–5–2930 are separate and distinct).

We note, however, that there may be circumstances when, notwithstanding *Blockburger,* a court may conclude there is no double jeopardy violation even if the same elements test is met where the legislature clearly intends multiple punishments for a single act. *See Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997).

lyzer test is not so punitive in purpose or effect as to constitute a criminal penalty.[5]

First, as in *Hudson,* although § 56–5–2950 does not expressly provide that its sanctions are "civil" in nature, it is significant that the authority to suspend an individual's license is vested with the "department," i.e., of motor vehicles. *Accord Hudson,* 118 S.Ct. at 495 (that authority to issue debarment orders is conferred upon administrative agencies is *prima facie* evidence legislature intended to provide a civil sanction).

■ Second, the ability to operate a motor vehicle on the highways is a privilege, rather than a right.[6] *State v. Collins,* 253 S.C. 358, 170 S.E.2d 667 (1969). *See also S.C. State Hwy. Dept. v. Harbin,* 226 S.C. 585, 86 S.E.2d 466 (1955) (recognizing that Legislature has authority to prescribe the conditions under which the privilege to operate a motor vehicle may be granted or revoked).

■ Third, in *Parker v. State Highway Department,* 224 S.C. 263, 78 S.E.2d 382 (1953), this Court held the suspension of the driver's license of one convicted of DUI constitutes no part of the punishment for the underlying traffic offenses; the sanction is civil and not criminal in its nature. The Court noted, "the **purpose of the revocation is to protect the public and not to punish the licensee.**" *Parker,* 224 S.C. at 271, 78 S.E.2d at 386. *Accord, State v. Higa,* 79 Hawai'i 1, 897 P.2d 928 (1995) (license suspension is remedial in that it

---

5. In determining whether the sanction is so punitive in nature as to have been transformed into a criminal sanction, we review, as did the Court in *Hudson,* the factors set forth in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644 (1963): 1) whether the sanction involves an affirmative disability or restraint, 2) whether it has historically been regarded as a punishment, 3) whether it comes into play only on a finding of scienter, 4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, 5) whether the behavior to which it applies is already a crime, 6) whether an alternative purpose to which it may rationally be connected is assignable for it, and 7) whether it appears excessive in relation to the alternative purpose assigned.

6. As *Hudson* noted, "revocation of a privilege voluntarily granted . . . is characteristically free of the punitive criminal element." 118 S.Ct. at 496.

protects public by removing potentially dangerous drivers from state roadways); *State v. Howell*, 254 Neb. 247, 575 N.W.2d 861 (Neb.1998) (suspension of driver's license for refusal to submit to a breathalyzer is clearly intended to protect the public). Accordingly, it is clear that license revocation has not historically been regarded as punishment in this state.[7]

Fourth, the sanctions here do not involve an "affirmative disability or restraint" as that term is normally understood. Although Price was temporarily prohibited from driving, this is "certainly nothing approaching the 'infamous punishment' of imprisonment." *Hudson*, 118 S.Ct. at 496 (debarment from participating in banking industry not an affirmative disability or restraint).

Fifth, although the sanction here, administrative suspension, does come into play only upon a finding of scienter, i.e., refusal to submit to testing, no one of the factors alone is dispositive. Sixth, although the sanction of license revocation may serve the goals of punishment (i.e., deterrence and retribution), the primary goal, as noted by this court in *Parker* is to protect the public. *Accord State v. Hickam*, 235 Conn. 614, 668 A.2d 1321 (Conn.1995) (even though administrative license suspension has some deterrent effect, primary thrust is remedial purpose of protecting public). Further, the *Hudson* court noted that the mere presence of a deterrent effect is insufficient to render such sanctions "criminal." 118 S.Ct. at 494–496 (recognizing that all civil penalties have some deterrent effect). *Accord U.S. v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *State v. Howell, supra*. Moreover, the mere fact that the conduct for which the sanction is imposed is also criminal is insufficient to render the sanction criminally

---

7. Price contends the remedial nature of an administrative license suspension is vitiated by the fact that the suspension is not immediate, and takes effect, generally, only after an administrative hearing. We disagree. That the state affords procedural due process, as required by *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), prior to suspending a driver's license simply does not transform the suspension from a remedial sanction into a punitive one. *Accord State v. Hickam, supra*, 668 A.2d at 1328 (fact that driver arrested for DUI is permitted to retain license for 30 days in order to meet due process does not affect sanction's status as remedial); *State v. Hanson, supra*, 532 N.W.2d at 602.

punitive. *Hudson*, 118 S.Ct. at 496, *U.S. v. Imngren*, 98 F.3d 811 (4th Cir.1996), *State v. Howell, supra.*

Finally, we note that nearly every other court which has addressed the issue finds no double jeopardy problem is posed by the administrative suspension of a driver's license following a drunk driving arrest or refusal to submit to chemical testing. *See State v. Zerkel*, 900 P.2d 744 (Alaska Ct.App.1995); *State v. Savard*, 659 A.2d 1265 (Me.1995); *State v. Hanson*, 532 N.W.2d 598 (Minn.App.1996) *State v. Young*, 3 Neb.App. 539, 530 N.W.2d 269 (Neb.Ct.App.1995); *State v. Strong*, 158 Vt. 56, 605 A.2d 510 (Vt.1992); *Ferguson v. Killens* 129 N.C.App. 131, 497 S.E.2d 722 (N.C.App.1998);[8] *State v. Mayo*, 915 S.W.2d 758 (Mo.1996); *State v. Funke*, 531 N.W.2d 124 (Iowa 1995); *Luk v. Commonwealth*, 421 Mass. 415, 658 N.E.2d 664 (Mass.1995); *State Ex Rel. Schwartz v. Kennedy*, 120 N.M. 619, 904 P.2d 1044 (N.M.1995); *Pyron v. State*, 330 Ark. 88, 953 S.W.2d 874 (Ark.1997); *State v. Ellenburg*, 283 Mont. 136, 938 P.2d 1376 (Mont.1997); *Ex Parte Pitluk*, 940 S.W.2d 220 (Tex.1997). *See also State v. McClendon*, 131 Wash.2d 853, 935 P.2d 1334, 1344–46 (Wash.1997) (concurring opinion exhaustively listing jurisdictions which find license suspensions are not "punishment" for double jeopardy purposes).

In sum, we find revocation of a driver's license for refusal to submit to a breathalyzer test is a civil sanction which has not been transformed into a criminal punishment. Accordingly, the state may prosecute Price for DUI without violation of the Double Jeopardy Clause.

The Court of Appeals' opinion is

**AFFIRMED.**

FINNEY, C.J., TOAL, MOORE and BURNETT, JJ., concur.

---

8. *Ferguson* applied a *Blockburger* analysis in determining there was no double jeopardy violation; it therefore found it unnecessary to address the defendant's contention the sanction was criminal.