578 S.E.2d 45

The **STATE**, Respondent,

v.

**Curtis Frank CUCCIA, Appellant.**

No. 3609.

Court of Appeals of South Carolina.

Submitted Feb. 10, 2003.

Decided March 10, 2003.

432

Stephen D. Schusterman, of Rock Hill, for Appellant.

Christopher Edward Anthony Barton, of Rock Hill, for Respondent.

ANDERSON, J.:

Curtis Cuccia was charged with driving under the influence (DUI), open container, possession of beer by a person under twenty-one years old, and speeding. His driver's license was suspended due to registering a blood-alcohol level of two one-hundredths of one percent (.02%) or more and being under twenty-one years old. He pled guilty to the open container charge, and the possession of beer and speeding charges were *nolle prossed.* Cuccia was subsequently convicted of DUI. Cuccia appeals his DUI conviction and sentence. We affirm.[1]

## FACTS/PROCEDURAL BACKGROUND

Municipal Judge Modla's Return to Appeal details the testimony presented by the arresting officer, Officer Biggers.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Officer Biggers testified that he stopped Cuccia for speeding. When Cuccia exited his vehicle, Officer Biggers smelled alcohol and noticed Cuccia was very unsteady on his feet. Cuccia failed four field sobriety tests. Officer Biggers averred that he observed an open beer bottle on the floorboard. At the time of Cuccia's arrest, he was nineteen years old.

Officer Pruett performed a Breathalyzer test. The test result indicated Cuccia's alcohol concentration was twenty-one one-hundredths of one percent (.21%), well above the two one-hundredths of one percent (.02%) limit for suspending his license under S.C.Code Ann. section 56–1–286(A) (Supp.2002). The level is also above ten one-hundredths of one percent (.10%) or more, where it may be inferred that the person was under the influence of alcohol under S.C.Code Ann. section 56–5–2950(b)(3) (Supp.2002).

After the test was performed, a Notice of Suspension form was completed in which two boxes were checked as the reason for the suspension of Cuccia's license. The first box was for registering an alcohol concentration of .02% or more while under the age of twenty-one, and the second checked box was for registering an alcohol concentration of .15% or more. Officer Biggers elected to pursue the suspension as a result of Cuccia's alcohol concentration of .02% or greater and the fact he was under the age of twenty-one.

Cuccia pled guilty to the open container charge, and the possession of beer and speeding charges were *nolle prossed.* At the trial on the DUI charge, Cuccia moved to dismiss the charge contending that it would be double jeopardy for him to have his license revoked and to face the charge of DUI. The motion to dismiss was denied on the grounds that Cuccia was arrested for DUI, but his license was suspended under an administrative or civil sanction and was not a criminal penalty barring subsequent prosecution for DUI. Cuccia was subsequently convicted of DUI and sentenced to thirty days incarceration or a fine of $559.00.

## *LAW/ANALYSIS*

### I. CIVIL SANCTION

Cuccia maintains his protection from double jeopardy was violated when his license was suspended under S.C.Code Ann.

section 56–1–286(A) (Supp.1998) and he was subsequently tried under S.C.Code Ann. section 56–5–2930 (Supp.1999) for DUI. We disagree.

Section 56–1–286(A) (Supp.2002) states:

In addition to any other penalty imposed by law unless otherwise prohibited in this section, including additional driver's license suspensions, the Department of Public Safety must suspend the driver's license, permit, or nonresident operating privilege of, or deny the issuance of a license or permit to a person under the age of twenty-one who drives a motor vehicle and has an alcohol concentration of two one-hundredths of one percent or more. The department shall not suspend a person's privilege to drive under this section if the person's privilege to drive has been suspended for a violation of Section 20–7–8920, 20–7–8925, or 56–5–2930 arising from the same incident.

Both the United States Constitution and the South Carolina Constitution protect against double jeopardy. The United States Constitution, which is applicable to South Carolina through the Fourteenth Amendment, provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. Const. Amend. V. The South Carolina Constitution states: "No person shall be subject for the same offense to be twice put in jeopardy of life or liberty. . . ." S.C. Const. Art. I, § 12. The "guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969) (overruled on other grounds by *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)); *accord Schiro v. Farley,* 510 U.S. 222, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994); *Justices of Boston Mun. Ct. v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984); *United States. v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *Stevenson v. State,* 335 S.C. 193, 198, 516

S.E.2d 434, 436 (1999); *McMullin v. South Carolina Dep't of Revenue & Taxation*, 321 S.C. 475, 478, 469 S.E.2d 600, 602 (1996); *State v. Owens*, 309 S.C. 402, 405, 424 S.E.2d 473, 475 (1992); *see also In re Matthews*, 345 S.C. 638, 648, 550 S.E.2d 311, 316 (2001) ("The Double Jeopardy Clause protects against multiple punishments for the same offense.").

> If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offence, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

*Ex Parte Lange*, 18 Wall. 163, 85 U.S. 163, 168, 21 L.Ed. 872 (1873). However, the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "in common parlance," be described as punishment. *Hudson v. United States*, 522 U.S. 93, 98–99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997). "The Clause protects only against the imposition of multiple *criminal* punishments for the same offense." *Id.* at 99, 118 S.Ct. at 493, 139 L.Ed.2d at 458 (emphasis in original). Nevertheless, the Clause may prevent the government from subjecting a defendant to both a criminal punishment and a civil sanction. *State v. Price*, 333 S.C. 267, 270, 510 S.E.2d 215, 217 (1998). The Double Jeopardy Clause is not automatically violated by the mere fact that a civil penalty has some deterrent effect. *Id.* at 270–71, 510 S.E.2d at 218. To determine whether a penalty is criminal or civil, a court must look to the face of the statute and then determine if the statutory scheme is so punitive in purpose or effect as to transform what was intended as a civil sanction into a criminal penalty. *Id.* at 271, 510 S.E.2d at 218.

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." Even in those

cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty.

*Hudson,* 522 U.S. at 99, 118 S.Ct. at 493, 139 L.Ed.2d at 459 (internal citations omitted); *see also In re Matthews,* 345 S.C. 638, 648, 550 S.E.2d 311, 316 (2001) ("As the United States Supreme Court recently reiterated, the determination whether a statute is civil or criminal is primarily a question of statutory construction, which must begin by reference to the act's text and legislative history."). "Only the clearest proof will suffice to override legislative intent and transform what has been denominated as a civil remedy into a criminal penalty." *Price,* 333 S.C. at 271, 510 S.E.2d at 218; *accord In re Matthews,* 345 S.C. at 648, 550 S.E.2d at 316. The *Hudson* court enunciated seven factors for determining if a statute constitutes a criminal penalty:

(1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Hudson* 522 U.S. at 99–100, 118 S.Ct. at 493, 139 L.Ed.2d at 459.

Section 56–1–286 allows for the suspension of a driver's license where the person is under the age of twenty-one and registers a blood alcohol concentration of two one-hundredths of one percent (.02%) or more.

The South Carolina Supreme Court, in *State v. Price,* 333 S.C. 267, 510 S.E.2d 215 (1998), undertook an exhaustive examination of the administrative revocation of a driver's license for the refusal to submit to a Breathalyzer exam and

determined that it is not a criminal penalty.[2]  *Id.* at 274, 510 S.E.2d at 219.  The court found the following factors determinative in reaching its conclusion: (1) the authority to impose the suspension is vested in an administrative agency [the Department of Public Safety]; (2) the ability to operate a motor vehicle on the highways is a privilege, rather than a right; (3) "the purpose of the revocation is to protect the public and not to punish the licensee;"[3]  (4) "the sanctions here do not involve an 'affirmative disability or restraint' as that term is normally understood;" (5) the sanction "come[s] into play only upon a finding of scienter, i.e., refusal to submit to testing, no one of these factors alone is dispositive," (6) "although the sanction of license revocation may serve the goals of punishment (i.e., deterrence and retribution), the primary goal ... is to protect the public;" and (7) "nearly every other court which has addressed the issue finds no double jeopardy problem is posed by the administrative suspension of a driver's license following a drunk driving arrest or refusal to submit to chemical testing."  *Id.* at 272–74, 510 S.E.2d at 218–19.

We find no reason why the rationale enounced in *Price* is not equally efficacious in an analysis of a suspension under section 56–1–286.  The section makes clear that the suspension is in addition to any other penalties which are imposed by law.  It is clearly not intended to be the sole criminal penalty for a person under the age of twenty-one who drives while under the influence of alcohol.  The statute gives authority to the Department of Public Safety to handle the suspension.  As in *Price,* the mere fact that the conduct for which the sanction is imposed is also criminal is insufficient to render the sanction criminally punitive.  *Id.* at 273–74, 510 S.E.2d at 219.

**2.**  The Court scrutinized former S.C.Code Ann. section 56–5–2950 (Supp.1997), which read, "If a person under arrest refuses, upon the request of a law enforcement officer, to submit to chemical tests as provided in subsection (a) of this section, ... the department, ... shall suspend his license or permit to drive, or any nonresident operating privilege for a period of ninety days."  The section is now codified at S.C.Code Ann. section 56–5–2951(A) (Supp.2001).

**3.**  *Price,* 333 S.C. at 272, 510 S.E.2d at 218 (quoting *Parker v. State Highway Department,* 224 S.C. 263, 271, 78 S.E.2d 382, 386 (1953)).

■ Accordingly, we find the revocation of a driver's license, where a driver under the age of twenty-one registers a blood alcohol concentration of two one-hundredths of one percent (.02%), is a civil sanction which has not been transformed into a criminal punishment.

## II. SAME ELEMENTS TEST

■ Under traditional double jeopardy analysis, multiple punishment is not prohibited where each offense calls for proof of a fact that the other does not. *State v. Owens*, 309 S.C. 402, 405, 424 S.E.2d 473, 475 (1992). The United States Supreme Court and the South Carolina Supreme Court have determined that in the context of criminal penalties, the *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) "same elements" test is the sole test of double jeopardy in successive prosecutions and multiple punishment cases. *See United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *State v. Easler*, 327 S.C. 121, 489 S.E.2d 617 (1997) ("[W]e decline to extend broader protection under our state constitution than that afforded under the federal constitution."). As the South Carolina Supreme Court noted in *Price*, "if a sanction is determined to be civil in nature and has not been transformed into a criminal penalty, then the double jeopardy clause is not implicated and there is simply no need to conduct a *Blockburger* analysis." *Price*, 333 S.C. at 271, n. 4, 510 S.E.2d at 218, n. 4.

■ However, once a sanction is found to be a criminal penalty, the *Blockburger* "same elements" test would apply. *Blockburger* insists upon a comparison of the elements of the two offenses to determine if "each provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180. A mere overlap in proof does not constitute a double jeopardy violation. *State v. Owens*, 309 S.C. 402, 405, 424 S.E.2d 473, 475 (1992).

Section 56–1–286 allows for the suspension of the driver's license of (1) a person, (2) under the age of twenty-one, (3) who drives, (4) a motor vehicle, and (5) has a blood alcohol concentration of two one-hundredths of one percent or more. Section 56–5–2930 makes it unlawful for (1) a person, (2) to drive, (3) a motor vehicle, (4) while under the influence of

alcohol, and (5) to the extent that the person's faculties to drive are materially and appreciably impaired.

Section 56–5–2930 (Supp.2002) provides:

It is unlawful for a person to drive a motor vehicle within this State while:

(1) under the influence of alcohol to the extent that the person's faculties to drive are materially and appreciably impaired;

(2) under the influence of any other drug or a combination of other drugs or substances which cause impairment to the extent that the person's faculties to drive are materially and appreciably impaired; or

(3) under the combined influence of alcohol and any other drug or drugs or substances which cause impairment to the extent that the person's faculties to drive are materially and appreciably impaired.

■■■ Even if we were to find the suspension of Cuccia's license under section 56–1–286 was a criminal penalty, we hold, pursuant to the *Blockburger* "same elements" test, that a subsequent prosecution for DUI does not violate Cuccia's double jeopardy protections. The two provisions do not necessitate proof of identical elements. One needs an age under twenty-one with a blood alcohol of above .02%, while the other is for any age driver whose faculties to drive are "materially and appreciably impaired." Violation of one provision does not result in an automatic finding of a violation of the other provision. Accordingly, pursuant to the *Blockburger* "same elements" test, suspending Cuccia's license under section 56–1–286 does not prohibit a subsequent prosecution under section 56–5–2930 for DUI, as the provisions require proof of different facts.

## CONCLUSION

We find the administrative suspension of Cuccia's driver's license for driving with a blood alcohol level of two one-hundredths of one percent or more while under the age of twenty-one is a civil sanction and not a criminal penalty. Additionally, we conclude even if it were transformed into a criminal penalty, the elements for suspension of the license under section 56–1–286 are not the same as the elements for

prosecuting a DUI under section 56–5–2930. Indubitably, Cuccia was properly prosecuted for DUI, subsequent to the revocation of his driver's license, without violation of the Double Jeopardy Clause.

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.