276 Neb. 47
STATE OF NEBRASKA, APPELLANT,
v.
HEATH K. ARTERBURN, APPELLEE.
STATE OF NEBRASKA, APPELLANT,
v.
DANIEL J. SOUCIE, APPELLEE.
STATE OF NEBRASKA, APPELLANT,
v.
ERIC W. NEJEZCHLEB, APPELLEE.
STATE OF NEBRASKA, APPELLANT,
v.
PAUL R. SHAFER, APPELLEE.
No. S-07-1037,
Through S-07-1040.
Supreme Court of Nebraska.
Filed July 3, 2008.
Alyson Keiser, Deputy Adams County Attorney, for appellant.
Arthur R. Langvardt, of Langvardt & Valle, P.C., for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

I. NATURE OF CASE
Based upon administrative license revocations for driving under the influence of alcohol, the director of the Department of Motor Vehicles (DMV) disqualified Heath K. Arterburn, Daniel J. Soucie, Eric W. Nejezchleb, and Paul R. Shafer (collectively Appellees) from holding commercial driver's licenses for 1 year pursuant to Neb. Rev. Stat. § 60-4,168 (Cum. Supp. 2006). Appellees entered pleas in bar to criminal charges pending for driving under the influence. The county court overruled the pleas, but the district court reversed. It held that the disqualification of Appellees from holding commercial driver's licenses was a criminal proceeding and that further prosecution of Appellees for driving under the influence constituted double jeopardy. The issue is whether the Legislature's intent in enacting § 60-4,168 was to create a criminal or civil sanction.

II. SCOPE OF REVIEW
[1,2] Statutory interpretation presents a question of law. In re Estate of Cooper, 275 Neb. 297, 746 N.W.2d 653 (2008). On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. State v. Howell, 254 Neb. 247, 575 N.W.2d 861 (1998).

III. FACTS
Appellees were arrested for driving under the influence of alcohol. Complaints were filed in the county court for Adams County, charging Appellees with driving under the influence. Appellees were subjected to administrative license revocation (ALR) proceedings that resulted in 90-day license revocations. They appealed the revocations to the district court, which subsequently affirmed the revocations.
Each Appellee held a commercial driver's license. Following the district court's decision to affirm the revocations, they received additional orders from the director disqualifying them from holding commercial driver's licenses for 1 year. In issuing such orders, the director relied upon § 60-4,168.
After these disqualifications, Appellees filed pleas in bar to the driving under the influence charges pending in the Adams County Court. They alleged that the State's criminal prosecution for driving under the influence placed them twice in jeopardy for the same offense. The county court overruled the pleas in bar. Appellees appealed to the Adams County District Court, which reversed. The district court concluded that the language of § 60-4,168, when imposing the 1-year commercial driver's license disqualification, "constitute[d] a criminal conviction" and, therefore, further prosecution of Appellees for driving under the influence constituted double jeopardy.

IV. ASSIGNMENTS OF ERROR
The State argues that the district court erred (1) in holding that the Legislature intended the ALR procedure for commercial license holders to be criminal, (2) in finding that § 60-4,168(7) makes an ALR a criminal conviction, and (3) in finding that the pleas in bar should have been sustained.

V. ANALYSIS
Appellees argue that the disqualification of their commercial driver's licenses constituted criminal punishment and that their subsequent prosecution for driving under the influence, which emanates out of the same factual circumstances, is barred by the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution. The State disagrees and argues that the sanctions imposed are civil in nature and that, therefore, double jeopardy is not implicated.
[3] The Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. State v. Howell, supra.
Section 60-4,168 provides:
(1) . . . [A] person shall be disqualified from driving a commercial motor vehicle for one year upon his or her first conviction . . . for:
(a) Driving a commercial motor vehicle in violation of section 60-6,196 or 60-6,197 . . . or, beginning September 30, 2005, driving any motor vehicle in violation of section 60-6,196 or 60-6,197. . . .
. . . .
(7) For purposes of this section, conviction means an unvacated adjudication of guilt, or a determination that a person has violated or failed to comply with the law, in a court of original jurisdiction or by an authorized administrative tribunal. . . .
We examine the above statute to determine whether the Legislature intended the sanctions contained therein to be civil or criminal.
In State v. Howell, 254 Neb. 247, 575 N.W.2d 861 (1998), we addressed the question of whether the administrative revocation of a driver's license for refusal to submit to a chemical test constituted punishment such that any subsequent prosecution put the offender twice in jeopardy. Steven Howell was arrested and charged with refusal to submit to a chemical test and driving under the influence. His driver's license was administratively revoked by the DMV. After the revocation, he filed a plea in bar alleging that criminal prosecution for refusal to submit to a chemical test and for driving under the influence placed him twice in jeopardy for the same offense. The county court denied his plea in bar, and he appealed to the district court. The district court affirmed the county court's decision, and Howell appealed to this court.
We affirmed the district court's decision, holding that the administrative revocation of a person's driver's license for refusing to submit to a chemical test was not "punishment" that could raise a double jeopardy bar to a criminal prosecution. We applied the analysis of multiple punishments under the Double Jeopardy Clause as set out in United States v. Ward, 448 U.S. 242, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980), supplemented by Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), and reaffirmed in Hudson v. United States, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). In State v. Howell, 254 Neb. at 251, 575 N.W.2d at 865, we referred to the analysis as "the two-part Kennedy-Ward analysis, as applied in Hudson."
[4] In analyzing whether an ALR for driving under the influence constitutes punishment for purposes of double jeopardy, the court must inquire (1) whether the Legislature intended the statutory sanction to be criminal or civil and (2) whether the statutory sanction is so punitive in purpose or effect as to transform what was clearly intended as a civil sanction into a criminal one. See State v. Howell, supra. The Double Jeopardy Clause protects against the imposition of multiple criminal punishments for the same offense. See Hudson v. United States, supra. It does not prohibit the imposition of a civil sanction and a criminal punishment for the same act. See id. Whether the Legislature intended a civil or criminal sanction is a matter of statutory construction. See id.

1. LEGISLATIVE INTENT
We first determine whether the Legislature intended the sanction of license revocation to be civil in nature. "'If so, we ordinarily defer to the legislature's stated intent." State v. Howell, 254 Neb. at 252, 575 N.W.2d at 866, quoting Kansas v. Hendricks, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997).
The Legislature specifically set forth its intent in enacting § 60-4,168, indicating that the purpose of Neb. Rev. Stat. §§ 60-4,137 to 60-4,172 (Reissue 2004 & Supp. 2005) is to implement federally mandated requirements and to reduce motor vehicle accidents, fatalities, and injuries:
The purposes of sections 60-462.01 and 60-4,137 to 60-4,172 are to implement the requirements mandated by the federal Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. 31100 et seq., the federal Motor Carrier Safety Improvement Act of 1999, Public Law 106-159, section 1012 of the federal Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, USA PATRIOT Act, 49 U.S.C. 5103a, and federal regulations and to reduce or prevent commercial motor vehicle accidents, fatalities, and injuries by: (1) Permitting drivers to hold only one operator's license; (2) disqualifying drivers for specified offenses and serious traffic violations; and (3) strengthening licensing and testing standards.
Neb. Rev. Stat. § 60-4,132 (Cum. Supp. 2006). Implicit in this language is the goal of protecting the public from accidents, fatalities, and injuries involving commercial drivers who are under the influence of alcohol or drugs.
The Legislature set forth a very similar goal when it enacted the ALR statutes. See Neb. Rev. Stat. § 60-6,205 (Cum. Supp. 2002), transferred to Neb. Rev. Stat. § 60-498.01 (Reissue 2004). We have previously interpreted the ALR statutes, concluding that the Legislature intended to create a civil sanction. See State v. Howell, 254 Neb. 247, 575 N.W.2d 861 (1998). Accordingly, because the goal in § 60-4,168 is very similar to that of the ALR statutes, there is strong evidence that the Legislature intended to create a civil sanction.
Nevertheless, Appellees argue, and the district court found, that the word "conviction" as defined in § 60-4,168(7) expressly demonstrates that the Legislature intended disqualification for commercial licensees to be a criminal sanction. Appellees claim that "conviction" means guilty of a criminal offense and that because § 60-4,168(7) describes a decision of an "authorized administrative tribunal" as a "conviction," a subsequent prosecution of Appellees for driving under the influence constitutes double jeopardy.
Appellees' argument fails to consider the intent of the commercial driver's license legislation. The Legislature's explicit intent is to reduce or prevent commercial motor vehicle accidents, fatalities, and injuries. See § 60-4,132. The stated purpose by the Legislature indicates that it intended a civil sanction.
However, the language used by the Legislature in a statute is not always dispositive. See State v. Howell, supra. See, also, Kansas v. Hendricks, 521 U.S. at 361 (stating that "a `civil label is not always dispositive'"). A court must also look at the structure and design of the statute to determine the Legislature's intent. The primary consideration in this regard is the procedural mechanisms established by the Legislature to enforce the statute. State v. Howell, supra, citing United States v. Ursery, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996).
[5-7] In our review of § 60-4,168, we are guided by the following principles: The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. Betterman v. Department of Motor Vehicles, 273 Neb. 178, 728 N.W.2d 570 (2007). It is the duty of a court to give a statute an interpretation that meets constitutional requirements if it can reasonably be done. Hamit v. Hamit, 271 Neb. 659, 715 N.W.2d 512 (2006), citing State ex rel. Stenberg v. Moore, 258 Neb. 199, 602 N.W.2d 465 (1999). When construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. State v. Vasquez, 271 Neb. 906, 716 N.W.2d 443 (2006).
A review of the structure, design, and procedural mechanisms to enforce § 60-4,168 reaffirms that the Legislature intended to create a civil sanction. In commercial license disqualifications, the director of the DMV, not a judge, revokes the license based upon a "conviction" as defined in § 60-4,168(7). If the offender is aggrieved by the final decision of the director, the party may appeal to the district court. See Neb. Rev. Stat. § 60-4,105 (Reissue 2004) and § 60-4,170.
A disqualification under § 60-4,168 is distinct from a criminal procedure. The burden of proof is a preponderance of the evidencenot proof beyond a reasonable doubt. The district court hears the appeal in equity. See § 60-4,105(3). The disqualification may occur following a criminal conviction or an ALR. In this instance, the disqualification was the result of an ALR by the DMV. Such ALR hearing has limited issues presented for determination by the director.
In § 60-4,168(7), the phrase "authorized administrative tribunal" implicitly references ALR proceedings. If the offender requests a hearing, the burden of proof is on the State to make a prima facie case for revocation. State v. Howell, 254 Neb. 247, 575 N.W.2d 861 (1998), citing State v. Hansen, 249 Neb. 177, 542 N.W.2d 424 (1996). Once a prima facie case is made, the burden shifts to the offender, who must disprove the prima facie case by a preponderance of the evidence to avoid revocation. State v. Howell, supra. This type of summary proceeding, which shifts the burden of proof to the offender, is a distinctly civil procedure. Id., citing United States v. Ursery, supra; U.S. v. Imngren, 98 E3d 811 (4th Cir. 1996); Ex parte Avilez, 929 S.W.2d 677 (Tex. App. 1996).
[8] A criminal trial and ALR proceedings serve different purposes. The ALR statutes anticipate that the criminal proceeding will be pursued, and the validity of the ALR may depend upon the resolution of the criminal proceeding. See Neb. Rev. Stat. § 60-498.02(4)(a) (Reissue 2004). The components of a series or collection of statutes pertaining to a certain subject matter which are in pari materia may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and sensible. Japp v. Papio-Missouri River NRD, 271 Neb. 968, 716 N.W.2d 707 (2006).
In sum, the structure, design, and procedural mechanisms, along with the Legislature's specified purpose, lead us to conclude that the Legislature's intent in enacting § 60-4,168 was to create a civil sanction.

2. PUNITIVE IN PURPOSE OR EFFECT
Having determined that the Legislature intended a commercial license revocation to be a civil sanction, we examine whether § 60-4,168 is so punitive in purpose or effect as to negate the Legislature's intent. See State v. Howell, supra, citing Hudson v. United States, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). Although the district court did not make a specific finding of such and Appellees do not argue such, we nevertheless address this issue because it is relevant to our interpretation of § 60-4,168.
We presume the sanction is civil unless Appellees provide the clearest proof that the statute is so punitive in its purpose or effect as to negate the Legislature's intent. See State v. Howell, supra.
In analyzing whether the purpose or effect of the statute is so punitive as to negate the Legislature's intent, we look to the seven factors set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963):
Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishmentretribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned. . . .
See, also, Hudson v. United States, supra.
Keeping in mind that these factors are "helpful" but "certainly neither exhaustive nor dispositive," United States v. Ward, 448 U.S. 242, 249, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980), and that these factors "`must be considered in relation to the statute on its face," Hudson v. United States, 522 U.S. at 100, quoting Kennedy v. Mendoza-Martinez, supra, we review each of the seven factors below for the "`clearest proof" to override the Legislature's intent, see id.

(a) Affirmative Disability or Restraint
Although we recognize that the loss of a commercial driver's license imposes a sanction that the driver may not operate a commercial vehicle for a 1-year period, this sanction is not an affirmative disability or restraint, as the term is normally understood. In Hudson v. United States, 522 U.S. at 104, the Court found that prohibiting a person from participating in the banking industry was not an affirmative disability or restraint, stating that the prohibition was "`certainly nothing approaching the "infamous punishment" of imprisonment." (Quoting Flemming v. Nestor, 363 U.S. 603, 80 S. Ct. 1367, 4 L. Ed. 2d 1435 (1960).) Accordingly, the 1-year revocation of a commercial license compares more closely to prohibiting a person from participating in the banking industry than to the "infamous punishment" of imprisonment. We conclude that an affirmative disability or restraint is not present.

(b) Historically Regarded as Punishment
As shown by our previous decisions on this topic, State v. Hansen, 249 Neb. 177, 542 N.W.2d 424 (1996), and State v. Howell, 254 Neb. 247, 575 N.W.2d 861 (1998), an ALR has not traditionally been understood to constitute punishment. A commercial driver's license is a privilege and not a right, and because the revocation of a privilege is usually not considered punishment, Hudson v. United States, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997), we conclude that the revocation of a commercial driver's license is not considered punishment, as it is merely the revocation of a privilege.

(c) Scienter
The 1-year revocation does not come into play "only" on a finding of scienter. The revocation applies regardless of the offender's state of mind.

(d) Promotion of PunishmentRetribution and Deterrence
We recognize that the imposition of the 1-year revocation will deter others from emulating Appellees' conduct, a traditional goal of criminal punishment; however, the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals. See Hudson v. United States, supra, citing United States v. Ursery, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996). Thus, although the 1-year revocation deters others because it serves the statute's nonpunitive purpose of protecting the public from accidents, fatalities, and injuries, and because any deterrent purpose it has is merely secondary to its stated purpose, we conclude that its deterrent purposes do not render the 1-year revocation a criminal sanction.

(e) Behavior Already Crime
The behavior to which the commercial license revocation applies is already a crime.

(f) Alternative Purpose
As stated above, the statute in question has the alternative, nonpunitive purpose of protecting the public from accidents, fatalities, and injuries. Any deterrent purpose is merely secondary to the statute's stated, nonpunitive purpose.

(g) Excessive
The statute's nonpunitive purpose of protecting the public from accidents, fatalities, and injuries is justified based on the offender's willingness to engage in conduct that, if continued, poses a danger to the public. In sum, there simply is very little showing, to say nothing of the "clearest proof' required, that a 1-year revocation is so punitive in purpose or effect as to make the sanction criminal.

VI. CONCLUSION
For the above-stated reasons, we reverse the district court's judgment and remand the cause to the district court with directions to affirm the judgment of the county court which overruled Appellees' pleas in bar.
REVERSED AND REMANDED WITH DIRECTIONS.
GERRARD, J., concurs in the result.