STATE OF CONNECTICUT *v.* MICHAEL BURNELL
(SC 18139)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 16—officially released March 24, 2009

*Jeffrey D. Brownstein*, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and, on the brief, *James Turcotte*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. In this appeal, we consider whether the administrative suspension of a driver's license by the commissioner of motor vehicles (commissioner) constitutes a conviction for purposes of the federal[1] and state[2] constitutional protections against double jeopardy, thus barring further criminal prosecution for operating a motor vehicle while under the influence of an intoxicating liquor or drug. The defendant, Michael Burnell, appeals[3] from the judgment of conviction, ren-

---

[1] "The fifth amendment to the United States constitution provides in relevant part: 'No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . .'

"The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969)." *State* v. *Michael J.*, 274 Conn. 321, 344 n.12, 875 A.2d 510 (2005).

[2] "The constitution of Connecticut does not contain an express prohibition against double jeopardy. Instead, we repeatedly have held that the due process guarantees, presently encompassed in article first, § 8, of the Connecticut constitution, include protection against double jeopardy." *State* v. *Michael J.*, 274 Conn. 321, 350, 875 A.2d 510 (2005); see also id., 350 n.14 (noting that due process guarantees formerly contained in article first, § 9, of 1818 state constitution were transferred to article first, § 8, in 1965 state constitution).

Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

[3] The defendant appealed from the judgment of the trial court to the Appellate Court. Subsequently, we granted the defendant's motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

dered after a conditional plea of nolo contendere pursuant to General Statutes § 54-94a, of illegally operating a motor vehicle while under the influence of liquor or drugs or while having an elevated blood alcohol content in violation of General Statutes § 14-227a (a).[4] On appeal, the defendant claims that the trial court improperly denied his motion to dismiss because his continued prosecution, after the commissioner already had suspended his license pursuant to General Statutes § 14-227b (c) and (e),[5] violated his constitutional protections

[1] General Statutes § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight, and 'motor vehicle' includes a snowmobile and all-terrain vehicle, as those terms are defined in section 14-379."

[5] General Statutes § 14-227b provides in relevant part: "(c) If the person arrested refuses to submit to such [blood, breath or urine] test or analysis or submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that such person has an elevated blood alcohol content, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresident, suspend the nonresident operating privilege of such person, for a twenty-four-hour period. The police officer shall prepare a written report of the incident and shall mail the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall be made on a form approved by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. . . .

"(e) (1) Except as provided in subdivision (2) of this subsection, upon receipt of such report, the Commissioner of Motor Vehicles may suspend any license or nonresident operating privilege of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of such person's arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subdivision shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person

against double jeopardy. We disagree and, accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On the evening of January 13, 2006, a police officer stopped the defendant while he was operating his car in the town of Wallingford. He was arrested after failing field sobriety tests, and subsequent chemical tests showed his blood alcohol content to be 0.198 and 0.173 percent. The state charged the defendant in a two part information with driving while under the influence of intoxicating liquor in violation of § 14-227a,[6] and failure to display lights in violation of General Statutes § 14-96a (a).

Subsequently, the department of motor vehicles (department) conducted an administrative hearing pur-

informing such person that such person's operator's license or nonresident operating privilege is suspended as of a date certain and that such person is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the Department of Motor Vehicles not later than seven days after the date of mailing of such suspension notice.

"(2) If the person arrested (A) is involved in an accident resulting in a fatality, or (B) has previously had such person's operator's license or nonresident operating privilege suspended under the provisions of section 14-227a during the ten-year period preceding the present arrest, upon receipt of such report, the Commissioner of Motor Vehicles may suspend any license or nonresident operating privilege of such person effective as of the date specified in a notice of such suspension to such person. Any person whose license or operating privilege has been suspended in accordance with this subdivision shall automatically be entitled to a hearing before the commissioner. The commissioner shall send a suspension notice to such person informing such person that such person's operator's license or nonresident operating privilege is suspended as of the date specified in such suspension notice, and that such person is entitled to a hearing and may schedule such hearing by contacting the Department of Motor Vehicles not later than seven days after the date of mailing of such suspension notice. Any suspension issued under this subdivision shall remain in effect until such suspension is affirmed or such license or operating privilege is reinstated in accordance with subsections (f) and (h) of this section. . . ."

Although § 14-227b has been amended several times since the defendant's arrest in 2006, those changes are not relevant to this appeal. Accordingly, references in this opinion to § 14-227b are to the current revision of the statute.

[6] In part B of the information, the state sought an enhanced penalty based on the defendant's February, 1998 conviction for violating § 14-227a. See General Statutes § 14-227a (g) (2).

suant to § 14-227b (g),[7] at which the hearing officer found that: (1) the police officer had probable cause to arrest the defendant for a violation specified in that statute; (2) the defendant was placed under arrest; (3) the defendant submitted to chemical analysis, the results of which "indicated a [blood alcohol content of 0.16 percent] or more"; and (4) the defendant was operating a motor vehicle at the time of his arrest. The commissioner ordered that the defendant's driver's license be suspended for ten months pursuant to § 14-227b (i).

The defendant subsequently moved, inter alia,[8] to dismiss all the charges against him on the ground that

[7] General Statutes § 14-227b (g) provides: "If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension, except that, with respect to a person whose license or nonresident operating privilege is suspended in accordance with subdivision (2) of subsection (e) of this section, such hearing shall be scheduled not later than thirty days after such person contacts the department. At the request of such person or the hearing officer and upon a showing of good cause, the commissioner may grant one continuance for a period not to exceed fifteen days. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle. In the hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person at the time of operation, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such person is twelve-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test results and analysis thereof accurately indicate the blood alcohol content at the time of operation. The fees of any witness summoned to appear at the hearing shall be the same as provided by the general statutes for witnesses in criminal cases."

[8] The defendant also moved to suppress the police officer's findings and observations with respect to the field sobriety tests, and for exclusion of the breath test evidence. The trial court denied this portion of the defendant's

trying him for his alleged violation of § 14-227a (a) would violate his state and federal constitutional protections against double jeopardy because he already had been "convicted" of the same offense in the administrative proceedings that were conducted pursuant to § 14-227b. The trial court denied the defendant's motion, relying on *State* v. *Hickam*, 235 Conn. 614, 626–28, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996), overruled in part on other grounds by *State* v. *Crawford*, 257 Conn. 769, 779–80, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002), in which this court concluded that an administrative license suspension pursuant to § 14-227b was not a punishment and, therefore, the defendant's rights against double jeopardy were not violated by his subsequent prosecution for a violation of § 14-227a. Thereafter, the defendant entered a conditional plea of nolo contendere pursuant to § 54-94a.[9] This appeal followed.

As we understand the defendant's claims on appeal, he contends that: (1) his federal constitutional protections against double jeopardy preclude his prosecution under § 14-227a because the commissioner's order suspending his license constitutes a " '[c]onviction' " as defined by General Statutes § 14-1 (21);[10] and (2) the

motion, and the defendant does not raise any claims in this appeal pertaining thereto.

[9] The trial court sentenced the defendant to two years imprisonment, execution suspended after 120 days, three years probation and a fine of $1000, and nolled the charge of failure to display lights in violation of § 14-96a (a).

[10] General Statutes § 14-1 (21) provides in relevant part: " 'Conviction' means an unvacated adjudication of guilt, or a determination that a person has violated or failed to comply with the law in a court of original jurisdiction or an authorized administrative tribunal, an unvacated forfeiture of bail or collateral deposited to secure the person's appearance in court, the payment of a fine or court cost, or violation of a condition of release without bail, regardless of whether or not the penalty is rebated, suspended or probated . . . ."

At the time of the defendant's arrest in 2006, the applicable statutory definition of " '[c]onviction' " was contained in subdivision (18) of subsection

criminal prosecution also is barred by the state constitution, which provides greater double jeopardy protections than does the federal constitution. We address each claim in turn.

I

The defendant first contends that, since the commissioner's order suspending his license pursuant to § 14-227b (i) constitutes a " '[c]onviction' " as defined by § 14-1 (21), it is a conviction for purposes of the federal double jeopardy analysis under *United States* v. *Halper,* 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), as modified by *Hudson* v. *United States,* 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997), thereby precluding further prosecution of the criminal charge under § 14-227a.[11] He further argues that *State* v. *Hickam,* supra, 235 Conn. 614, is distinguishable because that case was limited to the issue of whether an administrative suspension was a punishment, rather than a second prosecution or conviction for the same offense. In response, the state contends that the present case is controlled by our decision in *Hickam.* The state further relies on *Fishbein* v. *Kozlowski,* 252 Conn. 38, 49, 743 A.2d 1110 (1999), for the proposition that, the language of § 14-1 (21) notwithstanding, administrative license suspension proceedings are civil and do not place the defendant or licensee in jeopardy. We agree with the state, and conclude that the commissioner's suspension of

(a) of § 14-1. Following amendments to § 14-1 (a) not relevant to this appeal, subdivision (18) has been renumbered as subdivision (21). See Public Acts 2008, No. 08-150, § 1. For convenience sake, references in this opinion to § 14-1 are to the current revision of the statute.

[11] The state does not dispute two threshold contentions made by the defendant with respect to his double jeopardy claims, specifically that: (1) the criminal proceedings under § 14-227a and the administrative proceedings under § 14-227b implicate the "same offense" under *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); and (2) the "same sovereign" entity, namely, the state of Connecticut, is responsible for bringing both the administrative and criminal proceedings in this case.

the defendant's driver's license pursuant to § 14-227b (i) was not a criminal conviction and, therefore, the continued criminal prosecution under § 14-227a did not violate his federal and state constitutional rights against double jeopardy.

The defendant's double jeopardy claim presents a question of law, over which our review is plenary. *State v. Butler*, 262 Conn. 167, 174, 810 A.2d 791 (2002). "The fifth amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. . . .

"We have recognized that the [d]ouble [j]eopardy [c]lause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Citation omitted; internal quotation marks omitted.) *State v. Bletsch*, 281 Conn. 5, 27, 912 A.2d 992 (2007); see also, e.g., *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled on other grounds by *Alabama v. Smith*, 490 U.S. 794, 798–99, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). It is the second protection against double jeopardy that is at issue in this appeal.

Our analysis necessarily begins with a review of our factually and procedurally similar decision in *State v. Hickam*, supra, 235 Conn. 614, even though that case involved the third double jeopardy protection. In *Hickam*, as in the present case, the defendant had been arrested for driving while under the influence of intoxicating liquor in violation of § 14-227a (a), and the commissioner had suspended her driver's license pursuant

to § 14-227b prior to her criminal trial. Id., 617. In rejecting the defendant's double jeopardy claim, we noted that, under *United States* v. *Halper*, supra, 490 U.S. 448–49, "a civil or administrative sanction that serves a legitimate remedial purpose and is related rationally to that purpose does not give rise to a double jeopardy violation even if the sanction has some deterrent effect. Conversely, no matter what its label, a sanction or portion thereof that seeks only to punish triggers the protection of the double jeopardy clause."[12] *State* v. *Hickam*, supra, 623. We observed that "most courts that have spoken directly to the issue of whether an administrative license suspension following an arrest for driving while intoxicated raises a double jeopardy

---

[12] In *State* v. *Hickam*, supra, 235 Conn. 620, we noted dicta in *United States* v. *Halper*, supra, 490 U.S. 448, stating that "a civil sanction is punishment unless it can 'fairly be said *solely* to serve a remedial purpose' "; (emphasis in original); but observed that "[t]he majority of courts that have addressed the issue of whether the imposition of a civil sanction constitutes punishment for purposes of the double jeopardy clause . . . have applied *Halper*'s explicit holding, and have rejected the notion that *Halper* intended to characterize as punishment all civil or administrative sanctions that have any deterrent effect." *State* v. *Hickam*, supra, 621.

Indeed, in *Hudson* v. *United States*, supra, 522 U.S. 101–103, the Supreme Court subsequently characterized *Halper* as "deviat[ing] from longstanding double jeopardy principles" and rejected its "solely remedial" language and emphasis on the punitive nature of the sanction itself. The court adhered instead to determining whether the statute on its face provided a "criminal sanction"; id., 101; noting that "the factors listed in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144 [168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644] (1963), provide useful guideposts, including: (1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. It is important to note, however, that these factors must be considered in relation to the statute on its face . . . and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty . . . ." (Citations omitted; internal quotation marks omitted.) *Hudson* v. *United States*, supra, 99–100.

bar to prosecution have consistently relied upon *Halper*'s explicit holding and have determined that if a license suspension furthers the legitimate remedial goal of public safety, it is not punishment in the double jeopardy context even if it has an incidental deterrent or retributive effect."[13] Id., 622. Noting that "the legislative history of § 14-227b reveal[ed] that a principal purpose for the enactment of the statute was to protect the

---

[13] See *State* v. *Hickam*, supra, 235 Conn. 622–23, citing *Baldwin* v. *Dept. of Motor Vehicles*, 35 Cal. App. 4th 1630, 1642, 42 Cal. Rptr. 2d 422 (1995); *State* v. *Murray*, 644 So. 2d 533, 535 (Fla. App. 1994); *State* v. *Higa*, 79 Haw. 1, 7, 897 P.2d 928 (1995); *State* v. *Funke*, 531 N.W.2d 124, 126–27 (Iowa 1995); *Butler* v. *Dept. of Public Safety & Corrections*, 609 So. 2d 790, 797 (La. 1992); *State* v. *Savard*, 659 A.2d 1265, 1268 (Me. 1995); *State* v. *Jones*, 340 Md. 235, 266, 666 A.2d 128 (1995), cert. denied, 516 U.S. 1173, 116 S. Ct. 1265, 134 L. Ed. 2d 213 (1996); *State* v. *Hanson*, 532 N.W.2d 598, 601–602 (Minn. App. 1995), aff'd, 543 N.W.2d 84 (Minn. 1996); *State* v. *Cassady*, 140 N.H. 46, 50, 662 A.2d 955 (1995); *Tench* v. *Commonwealth*, 21 Va. App. 200, 205–206, 462 S.E.2d 922 (1995).

In addition to these authorities, we note that post-*Hickam* case law holds uniformly that administrative license suspensions are remedial in nature and are not "punishments" for double jeopardy purposes. See *Herbert* v. *Billy*, 160 F.3d 1131, 1138–39 (6th Cir. 1998); *Pyron* v. *State*, 330 Ark. 88, 93, 953 S.W.2d 874 (1997); *Deutschendorf* v. *People*, 920 P.2d 53, 61 (Colo. 1996); *State* v. *Kocher*, 542 N.W.2d 556, 558 (Iowa 1996); *State* v. *Mertz*, 258 Kan. 745, 760, 907 P.2d 847 (1995); *State* v. *Hanson*, 543 N.W.2d 84, 89–90 (Minn. 1996); *Keyes* v. *State*, 708 So. 2d 540, 547–48 (Miss. 1998); *State* v. *Mayo*, 915 S.W.2d 758, 762–63 (Mo.), cert. denied, 519 U.S. 813, 117 S. Ct. 61, 136 L. Ed. 2d 23 (1996); *State* v. *Howell*, 254 Neb. 247, 257–58, 575 N.W.2d 861 (1998); *State* v. *Lomas*, 114 Nev. 313, 317–19, 955 P.2d 678 (1998); *Smith* v. *County Court*, 224 App. Div. 2d 89, 92, 649 N.Y.S.2d 507 (1996), appeal denied, 89 N.Y.2d 807, 677 N.E.2d 289, 654 N.Y.S.2d 717 (1997); *State* v. *Oliver*, 343 N.C. 202, 209–10, 470 S.E.2d 16 (1996); *State* v. *Zimmerman*, 539 N.W.2d 49, 55–56 (N.D. 1995); *State* v. *Gustafson*, 76 Ohio St. 3d 425, 441–42, 668 N.E.2d 435 (1996); *Kane* v. *State*, 915 P.2d 932, 937 (Okla. Crim. App. 1996); *State* v. *Price*, 333 S.C. 267, 274, 510 S.E.2d 215 (1998); *Tharp* v. *State*, 935 S.W.2d 157, 160–61 (Tex. Crim. App. 1996); *State* v. *Arbon*, 909 P.2d 1270, 1275 (Utah App.), cert. denied, 916 P.2d 909 (Utah 1996); *Depsky* v. *Commonwealth*, 50 Va. App. 454, 466–67, 650 S.E.2d 867 (2007); *State* v. *McMaster*, 206 Wis. 2d 30, 49–50, 556 N.W.2d 673 (1996); *Glasrud* v. *Laramie*, 934 P.2d 1242, 1246 (Wyo. 1997); see also *State* v. *McClendon*, 131 Wash. 2d 853, 869, 935 P.2d 1334 ("administrative issuance of probationary licenses is not punishment under the double jeopardy clause"), cert. denied, 522 U.S. 1027, 118 S. Ct. 624, 139 L. Ed. 2d 605 (1997).

public by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process"; id., 624; we concluded that a postarrest license suspension under § 14-227b "is sufficiently remedial so that the administrative suspension does not bar a future prosecution for the same conduct that gave rise to the suspension." Id.

The defendant argues, however, that *Hickam* is distinguishable because the present case implicates the second double jeopardy protection, namely, that against multiple convictions or prosecutions for the same offense. We disagree. It is well settled that prosecutions or convictions for double jeopardy purposes arise only from proceedings that are "essentially criminal." (Internal quotation marks omitted.) *Breed* v. *Jones*, 421 U.S. 519, 528, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975); id., 528–30 (juvenile delinquency proceedings are essentially criminal because of impact on respondent and procedural protections afforded). Further, we have recognized "repeatedly that a license suspension hearing is *not* a criminal proceeding and that the subject of such a hearing is not entitled to all of the procedural protections that would be available in a criminal proceeding." (Emphasis added.) *Fishbein* v. *Kozlowski*, supra, 252 Conn. 49; id., 49–50 (reasonable and articulable suspicion not required to justify initial stop for purpose of administrative proceeding). Accordingly, we agree with those few sister state courts that have considered this precise issue, and we conclude that an administrative license suspension proceeding is not a criminal prosecution that gives rise to a conviction for double jeopardy purposes. See *Deutschendorf* v. *People*, 920 P.2d 53, 57 (Colo. 1996) ("Because each of the cases before us involves a criminal prosecution following a civil proceeding, they do not constitute separate criminal prosecutions after acquittals for the same offenses. The petitioners were not 'prosecuted' by the [d]epartment of [r]evenue, nor did the administrative resolution of their civil cases in their favor constitute 'acquit-

tals.' "); *State* v. *Mertz*, 258 Kan. 745, 750–51, 907 P.2d
847 (1995) ("even though the defendant's license has
been administratively suspended, the defendant has not
been 'prosecuted' for the 'offense' of driving while under
the influence of alcohol"); *State* v. *Gustafson*, 76 Ohio
St. 3d 425, 436, 668 N.E.2d 435 (1996) (court proceeded
to multiple punishments analysis after concluding that
"[d]ouble jeopardy prohibitions do not preclude the
state from trying a defendant criminally . . . after an
administrative license suspension").

Undaunted by this voluminous body of adverse case
law, the defendant relies on § 14-1 (21), which defines
a " '[c]onviction' " as, inter alia, "an unvacated adjudica-
tion of guilt, or a determination that a person has vio-
lated or failed to comply with the law in a court of
original jurisdiction *or an authorized administrative
tribunal . . . .*" (Emphasis added.) See also footnote
10 of this opinion. The defendant's reliance on this
definition, which is ambiguous when viewed in the con-
text of the relevant statutes,[14] is misplaced, as neither
the text nor the legislative histories of § 14-1 (21) or
§ 14-227b evince any intention that an administrative
suspension forecloses future criminal proceedings
against the defendant for the same offense.[15] Section 14-

----

[14] See General Statutes § 1-2z.

[15] As discussed in greater detail in *State* v. *Hickam*, supra, 235 Conn.
624–25, § 14-227b was enacted in 1989 as Public Acts 1989, No. 89-314. In
addition to indicating that § 14-227b was enacted for the "overall remedial
purpose of removing from the highways those who have exhibited a propen-
sity to drive while under the influence of alcohol"; id., 625; the legislative
history demonstrates that the legislature intended for the administrative
process to supplement, and not supplant, the criminal process. See 32 H.R.
Proc., Pt. 30, 1989 Sess., pp. 10,524–25, remarks of Representative Robert
M. Ward (noting that administrative suspension would be in addition to
court-ordered alcohol education programs for first time offenders); see also
Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1989 Sess., p.
1463, remarks of Michael Krochmalny, director of adjudications for depart-
ment (clarifying that suspension under § 14-227b would be independent of
any court-ordered program or disposition).

1 (21), although codified in the motor vehicle statutes' broadly applicable definition section, was originally enacted as No. 90-263, § 1 (a) (16) of the 1990 Public Acts (P.A. 90-263), which had adopted the Uniform Commercial Driver License Act. The legislature enacted P.A. 90-263 to comply with federal law[16] that conditioned the receipt of certain highway funds on the states' enactment of commercial driver's license programs to address various safety problems, including the maintenance of multiple licenses in different states to minimize the administrative impact of checkered driving records. See, e.g., 33 S. Proc., Pt. 10, 1990 Sess., pp. 3168–69, remarks of Senator Michael P. Meotti (discussing federal requirement that all states enact system for commercial driver license program under Uniform Commercial Driver License Act).

In addition, we note that the definition of "conviction" in the Uniform Commercial Driver License Act, or in § 14-1 (21), is taken nearly verbatim from the federal regulations of the United States Department of Transportation, which are issued by the Federal Motor Carrier Safety Administration. See 49 C.F.R. § 383.5 (2008).[17] The term is utilized in the context of the commercial driver licensing statutes governing the notification of the department; see, e.g., General Statutes § 14-

---

[16] See generally federal Commercial Motor Vehicle Safety Act of 1986, codified at 49 U.S.C. § 31301 et seq.

[17] Section 383.5 of title 49 of the Code of Federal Regulations (2008) provides in relevant part: "Conviction means an unvacated adjudication of guilt, or a determination that a person has violated or failed to comply with the law in a court of original jurisdiction or by an authorized administrative tribunal, an unvacated forfeiture of bail or collateral deposited to secure the person's appearance in court, a plea of guilty or nolo contendere accepted by the court, the payment of a fine or court cost, or violation of a condition of release without bail, regardless of whether or not the penalty is rebated, suspended, or probated. . . ."

44j;[18] and the disqualification of license holders upon the "conviction" of certain offenses, either in Connecticut or in other states. See, e.g., General Statutes § 14-44k.[19] Thus, there is nothing in the legislative history of § 14-1 (21) that suggests that the legislature intended

[18] General Statutes § 14-44j provides in relevant part: "(a) Each person who holds a commercial driver's license issued by the commissioner and who is convicted of violating, while operating any type of motor vehicle, any law of any other state or any province of Canada relating to motor vehicle traffic control, other than a parking violation, shall notify the commissioner within thirty days after the date such person has been convicted of any such violation. The commissioner may prescribe, by regulations adopted in accordance with chapter 54, the method and manner of notification pursuant to this subsection.

"(b) Each person who holds a commercial driver's license who is convicted of violating any provision of the law of this state, any other state or any province of Canada relating to motor vehicle traffic control, other than a parking violation, shall notify his employer within thirty days after such person has been convicted of any such violation. . . ."

[19] General Statutes § 14-44k provides in relevant part: "(b) In addition to any other penalties provided by law, and except as provided in subsection (d) of this section, a person is disqualified from operating a commercial motor vehicle for one year if convicted of one violation of (1) operating any motor vehicle while under the influence of intoxicating liquor or drugs, or both, under section 14-227a, (2) operating a commercial motor vehicle while having a blood alcohol concentration of four-hundredths of one per cent, or more, (3) evasion of responsibility under section 14-224, (4) using any motor vehicle in the commission of any felony, as defined in section 14-1, or (5) operating a commercial motor vehicle while the operator's commercial driver's license is revoked, suspended or cancelled, or while the operator is disqualified from operating a commercial motor vehicle. In addition to any other penalties provided by law, and except as provided in subsection (d) of this section, a person is disqualified from operating a commercial motor vehicle for a period of not more than two years if convicted of one violation of causing a fatality through the negligent or reckless operation of a commercial motor vehicle, as evidenced by a conviction of a violation of section 14-222a, 53a-56b, 53a-57 or 53a-60d. . . .

"(e) In addition to any other penalties provided by law, a person is disqualified from operating a commercial motor vehicle for (1) sixty days if convicted of failure to stop at a railroad grade crossing, in violation of section 14-249 or 14-250, while operating a commercial motor vehicle, (2) one hundred twenty days if convicted of a second violation of section 14-249 or 14-250 while operating a commercial motor vehicle, and (3) one year if convicted of a third or subsequent violation of section 14-249 or 14-250 while operating a commercial motor vehicle, during any three-year period.

"(f) In addition to any other penalties provided by law, a person is disqualified from operating a commercial motor vehicle for a period of not less

for administrative suspensions to preclude subsequent criminal proceedings.

Moreover, the legislative history of the amendments to § 14-227b, subsequent to the original enactment of what is now § 14-1 (21), makes clear the legislature's continued understanding that an administrative suspension does not foreclose criminal proceedings for a violation of § 14-227a. For example, when the legislature enacted No. 99-255 of the 1999 Public Acts, which, inter alia, lengthened administrative suspension periods for defendants with higher blood alcohol content; see General Statutes § 14-227b (i); Senator Martin M. Looney noted that first time offenders who successfully complete the alcohol education program "are eligible to have the charge removed from their record and not to suffer the court imposed suspension. Although they do, of course, suffer an administrative suspension through the [department]." 42 S. Proc., Pt. 9, 1999 Sess., pp. 2908–2909; see also id., p. 2909, remarks of Senator Looney (noting that defendants who appear intoxicated and refuse testing receive "a 180 day administrative suspension by the [department], entirely apart from whatever happens in the disposition of the court case"); id., p. 2933, remarks of Senator Robert L. Genuario ("[U]nder our law, first time offenders face two consequences. One is the judicial context, judicial consequence. And the other, by virtue of legislation passed by this General Assembly several years ago, is the administrative revocation of a license.").[20]

than sixty days if convicted of two serious traffic violations, as defined in section 14-1, or one hundred twenty days if convicted of three serious traffic violations, committed while operating any motor vehicle arising from separate incidents occurring within a three-year period. The period of any disqualification for a subsequent offense imposed under this subsection shall commence immediately after the period of any other disqualification imposed on such person. . . ."

[20] Similarly, when the legislature enacted No. 04-250 of the 2004 Public Acts, which amended § 14-227b to create what is now subsection (e) (2) of that section; see footnote 5 of this opinion; a colloquy between Representatives Kosta Diamantis and Jacqueline M. Cocco emphasized the parallel

Thus, we find persuasive *State* v. *Arterburn*, 276 Neb. 47, 48, 751 N.W.2d 157 (2008), a recent decision rejecting a defendant's argument that the definition of "conviction" under the Nebraska commercial driver's license statute;[21] Neb. Rev. Stat. § 60-4,168 (7) (Cum. Sup. 2006); renders an administrative license suspension a conviction for double jeopardy purposes. In *Arterburn*, the Nebraska Supreme Court concluded that it did not violate the defendant's rights against double jeopardy to prosecute him criminally for driving while intoxicated, despite the fact that he already had been disqualified from holding a commercial driver's license based upon the administrative license revocation that had followed his arrest. *State* v. *Arterburn*, supra, 52. Emphasizing that the "language used by the [l]egislature in a statute is not always dispositive"; id.; the court disagreed with the defendant's argument that the legislature's use of the word " 'conviction' " in the statutory definition "expressly demonstrates that [it] intended disqualification for commercial licensees to be a criminal sanction." Id. The court stated that this argument "fails to consider the intent of the commercial driver's license legislation . . . to reduce or prevent commercial motor vehicle accidents, fatalities, and injuries"; id.; and also noted that the "procedural mechanisms established by the [l]egislature to enforce the statute," including the administrative forum and lower burden of proof, are

criminal and administrative proceedings. See 47 H.R. Proc., Pt. 17, 2004 Sess., pp. 5480–82 (noting that revision would apply to person who, as first time criminal offender, previously received court imposed alcohol education program and ninety day administrative suspension).

[21] The applicable statute provided for disqualification from driving a commercial vehicle upon the defendant's "first conviction" for driving while intoxicated, and defined " 'conviction' " as, inter alia, " 'a determination that a person has violated or failed to comply with the law, in a court of original jurisdiction or by an authorized administrative tribunal . . . .' " *State* v. *Arterburn*, supra, 276 Neb. 50, quoting Neb. Rev. Stat. § 60-4,168 (7) (Cum. Sup. 2006).

civil in nature.[22] Id., 53. The court, therefore, concluded that it did not violate double jeopardy protections to prosecute the defendant criminally after he had been administratively disqualified from holding a commercial driver's license. Id., 57. Given the legislative history and language of our own statutes, especially when viewed in light of the now well established decision in *State* v. *Hickam*, supra, 235 Conn. 614, we agree with *Arterburn*, and conclude that an administrative license suspension under § 14-227b does not constitute a conviction for purposes of the federal double jeopardy protections.

## II

The defendant next claims that, under the double jeopardy protections of the due process clause contained in article first, § 8, of the Connecticut constitution; see footnote 2 of this opinion; "the state constitution provides even greater protection to our citizens than does the [federal] [c]onstitution and would not only extend double jeopardy protection to the [department] proceedings, but in addition, would provide increased double jeopardy protection beyond that offered by the strict and technical [*Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)] test." Providing the bare rudiments of an analysis under *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992), the defendant argues for the application, as a matter of state constitutional law, of our now defunct holding in *State* v. *Lonergan*, 213 Conn. 74, 92, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990), overruled in part on other grounds by *State* v. *Alvarez*, 257 Conn. 782, 794–95, 778 A.2d 938 (2001), that, under the federal constitution,

---

[22] The court also relied on its prior case law in the administrative revocation area, which had concluded that driver's license revocation is a civil sanction and not a punishment. See *State* v. *Arterburn*, supra, 276 Neb. 55–57.

" 'if the same evidence offered to prove a violation of the offense charged in the first prosecution is the sole evidence offered to prove an element of the offense charged in the second prosecution, then prosecution of the second offense is barred on double jeopardy grounds, regardless of whether either offense requires proof of a fact that the other does not.' "[23] The defendant's state constitutional arguments lack merit.

First, we have concluded in part I of this opinion that double jeopardy principles do not apply because successive prosecutions and convictions did not occur, as the administrative proceedings were civil in nature and did not give rise to a "conviction." Thus, the precise analysis for determining whether the parallel proceedings under §§ 14-227a and 14-227b implicate the "same offense" simply is not dispositive of the issues in this appeal. See also footnote 11 of this opinion.

Second, to the extent that the defendant claims that our state constitution provides him with greater protection in this context, namely, that the administrative proceedings should be considered a criminal prosecution giving rise to a "conviction" as a matter of state constitutional law, he has not explained why that claim is not foreclosed by our recent conclusion that: "The constitution of Connecticut does not contain an express prohibition against double jeopardy. Instead, we repeatedly have held that the due process guarantees, presently encompassed in article first, § 8, of the Connecticut constitution, include protection against double jeopardy. . . . We have observed, however, that the absence of an explicit constitutional double

_____

[23] This conclusion in *Lonergan* was overruled as a matter of federal constitutional law when the United States Supreme Court concluded in *United States* v. *Dixon*, 509 U.S. 688, 704, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993), that the *Blockburger* test; see footnote 11 of this opinion; is the "exclusive test for determining whether two charges are the same offense for double jeopardy purposes." *State* v. *Alvarez*, supra, 257 Conn. 795.

jeopardy provision strongly suggests that the incorporated common-law double jeopardy protection *mirrors, rather than exceeds,* the federal constitutional protection. . . . [A] historical review reveals that the exclusion of a textual ban on double jeopardy from the constitution of Connecticut was not the result of oversight but, rather, the product of a conscious decision by our constitutional forebears." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Michael J.,* 274 Conn. 321, 350–51, 875 A.2d 510 (2005). Accordingly, we conclude that the defendant's state constitutional claim lacks merit.

The judgment is affirmed.

In this opinion the other justices concurred.