753 S.E.2d 524

SOUTH CAROLINA DEPARTMENT OF
MOTOR VEHICLES, Respondent,

v.

Phillip Samuel BROWN, Petitioner.

Appellate Case No. 2011–194026.

No. 27346.

Supreme Court of South Carolina.

Heard Feb. 7, 2013.

Decided Jan. 8, 2014.

Rehearing Denied Feb. 6, 2014.

Heath Preston Taylor, of Taylor Law Firm, LLC, of West Columbia, for Petitioner.

Frank L. Valenta, Jr., Linda Annette Grice, and Philip S. Porter, all of South Carolina Department of Motor Vehicles, of Blythewood, for Respondent.

Chief Justice TOAL.

The South Carolina Department of Motor Vehicles (the Department) suspended Phillip Samuel Brown's (Petitioner) driver's license following his arrest for driving under the influence (DUI).[1] The Hearing Officer for the South Carolina Office of Motor Vehicles Hearings ("OMVH") rescinded the suspension on the ground that the arresting officer failed to present reliable evidence that the breathalyzer test was ad-

---

1. S.C.Code Ann. § 56–5–2930 (2006) (outlining the offense of operating a motor vehicle while under the influence of alcohol or drugs). We note that this code section and related code sections referenced in this opinion were amended in 2008 and again in 2012. Because Petitioner's arrest occurred prior to these amendments, we cite to the code sections in effect at the time of his arrest. There are, however, no substantive changes that would affect the disposition of this case.

ministered and the sample obtained in accordance with the provisions of section 56–5–2950. Specifically, the OMVH found that the required "simulator test" was not conducted prior to the actual test. The Administrative Law Court (ALC) reversed and reinstated Petitioner's license suspension.

On appeal, the court of appeals affirmed the ALC's order, finding Petitioner's failure to contemporaneously object to the arresting officer's testimony with respect to the functioning of the breathalyzer precluded the review of the issue on appeal. We affirm Petitioner's driver's license suspension.

### FACTS/PROCEDURAL BACKGROUND

On July 7, 2008, at approximately 1:46 a.m., Officer Scott Wilson of the Columbia Police Department initiated a traffic stop after observing Petitioner's vehicle traveling on Harden Street without the headlights illuminated. During the stop, Officer Wilson smelled alcohol on Petitioner's breath and observed that Petitioner exhibited bloodshot eyes, slurred speech, and "slow and deliberate movements." As a result, Officer Wilson advised Petitioner of his Miranda[2] rights and ordered him to perform four field sobriety tests. After Petitioner "failed" three of the four tests, Officer Wilson arrested Petitioner and transported him to the Columbia Police Department.

At the police department, Petitioner agreed to submit to a DataMaster breathalyzer test after being read the Advisement of Implied Consent rights[3] and his Miranda rights. According to Officer Wilson, Petitioner had a blood alcohol concentration level of 0.17%, more than twice the legal limit of 0.08%.

---

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. *See* S.C.Code Ann. § 56–5–2950(a) (2006) ("A person who drives a motor vehicle in this State is considered to have given consent to chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol or drugs or the combination of alcohol and drugs if arrested for an offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of alcohol, drugs, or a combination of alcohol and drugs. A breath test must be administered at the direction of a law enforcement officer who has arrested a person for driving a motor vehicle in this State while under the influence of alcohol, drugs, or a combination of alcohol and drugs.").

*See* S.C.Code Ann. § 56–5–2933 (2006). As a result, he issued Petitioner a Notice of Suspension pursuant to section 56–5–2951(A) of the South Carolina Code.[4]

Petitioner filed a timely request for an administrative hearing before the OMVH to challenge the license suspension. On August 26, 2008, the Hearing Officer held a hearing on Petitioner's license suspension in accordance with section 56–5–2951 of the South Carolina Code.[5] At the hearing, Officer Wilson testified as the sole witness for the Department. During his brief testimony, Officer Wilson recounted the arrest and Petitioner's submission to the breathalyzer test, which resulted in the purported "0.17" reading.[6] Officer Wilson attested that he was certified to operate the DataMaster machine and that "[t]he machine was functioning properly at the time" of the test. However, the Department did not offer any documentary evidence concerning the machine's functioning or the actual test results.

It was not until his closing argument that counsel for Petitioner moved to rescind the license suspension on the ground the Department failed to produce evidence that the

---

4. *See* S.C.Code Ann. § 56–5–2951(A) (2006) ("The Department of Motor Vehicles must suspend the driver's license of ... a person who drives a motor vehicle and ... has an alcohol concentration of [0.15%] or more.").

5. Section 56–5–2951(F) limits the scope of the administrative hearing to whether the person:
 (1) was lawfully arrested or detained;
 (2) was advised in writing of the rights enumerated in Section 56–5–2950;
 (3) refused to submit to a test pursuant to Section 56–5–2950; or
 (4) consented to taking a test pursuant to Section 56–5–2950, and the:
 (a) reported alcohol concentration at the time of testing was [0.15%] or more;
 (b) individual who administered the test or took samples was qualified pursuant to Section 56–5–2950;
 **(c) tests administered and samples obtained were conducted pursuant to Section 56–5–2950;** and
 (d) the machine was working properly.
 S.C.Code Ann. § 56–5–2950(F) (2006) (emphasis added).

6. Specifically, Officer Wilson testified, without objection, that Petitioner submitted to the breathalyzer test:
 [Petitioner] was placed under arrest at that time. He was taken to the DataMaster room at police headquarters. He was informed of the ... video recording at the site. He was Mirandized again. He was read his implied consent; mouth was checked; did a time stamp; he was observed for 20 minutes. He did take the test; he blew a. 17.

breathalyzer test was administered in accordance with the procedures set forth in section 56–5–2950, which, in part, requires a simulator test to be performed prior to the actual test to ensure the machine is functioning properly.[7]

In response to Petitioner's belated motion, Officer Wilson referenced his testimony that the machine was functioning properly and explained that the machine "does check itself to make sure it ... meets all the requirements within the simulator," which include the temperatures and the alcohol level. He added that the machine "will not function if it's past its solution change date." Petitioner objected to Officer Wilson offering any new testimony. In turn, the Hearing Officer struck the "last statement regarding it will not function, it will not work properly."

Following the hearing, the Hearing Officer issued an order wherein he rescinded the administrative suspension of Petitioner's license. In so ruling, the Hearing Officer concluded that "[t]he officer must show that he complied with all requirements while administering the breath test and that the machine was functioning properly." Although the Hearing Officer acknowledged Officer Wilson's testimony that the machine was working properly and that the test reported a blood alcohol concentration of 0.17%, he found the Department did not present any documentary evidence supporting Wilson's testimony. Ultimately, the Hearing Officer rescinded the license suspension as the Department failed to present evidence to show that Petitioner registered a 0.15% or greater on the breathalyzer test.

The Department appealed, and the ALC reversed the decision of the Hearing Officer.[8] As a threshold matter, the ALC

---

7. Section 56–5–2950(a) provides, in relevant part:
 The breath test must be administered by a person trained and certified by the Department of Public Safety, pursuant to SLED policies.... **Before the breath test is administered, an [0.08%] simulator test must be performed and the result must reflect a reading between 0.076[%] and 0.084[%].**
 S.C.Code Ann. § 56–5–2950(a) (2006) (emphasis added).

8. Initially, the ALC held the Hearing Officer erred in finding there was no evidence Petitioner registered 0.15% or greater on the breath test as

found the Hearing Officer erred in discounting Officer Wilson's sworn testimony on whether the DataMaster machine was working properly "simply because the testimony was not corroborated by other evidence." Because this testimony was not contradicted, the ALC determined the Department carried "its burden of proof."

Although the ALC acknowledged that Officer Wilson did not testify regarding the simulator test provision of section 56–5–2950, the court found Petitioner was statutorily required to raise this issue to the Hearing Officer prior to his closing argument.[9] In reaching this conclusion, the ALC found the Department was not required to present evidence regarding the simulator solution "as part of its prima facie case." Instead, the ALC found that pursuant to section 56–5–2950(e), "the provisions under § 56–5–2950 must not be considered by OMVH hearing officers *unless a party expressly moves for their consideration.*" (Emphasis added.) The ALC noted that "even in cases where a violation of the provisions is

---

Officer Wilson testified the test indicated a reading of 0.17%. As noted by the ALC, Petitioner conceded in his brief to the ALC that Officer Wilson testified regarding the 0.17% reading.

9. In support of this finding, the ALC cited section 56–5–2950(e), which provides:

Policies, procedures, and regulations promulgated by SLED may be reviewed by the trial judge or hearing officer **on motion of either party.** The failure to follow any of these policies, procedures, and regulations, or the provisions of this section, shall result in the exclusion from evidence any test[ ] results, if the trial judge or hearing officer finds that such failure materially affected the accuracy or reliability of the test results or the fairness of the testing procedure.

S.C.Code Ann. § 56–5–2950(e) (2006) (emphasis added). In the 2008 amendments, this section was designated as subsection (J) and its final sentence changed to state:

The failure to follow any of these policies, procedures, and regulations, or the provisions of this section, shall result in the exclusion from evidence of any test results, if the trial judge or hearing officer finds that this failure materially affected the accuracy or reliability of the test results or the fairness of the testing procedure and the court[,] trial judge[,] or hearing officer rules specifically as to the manner in which the failure materially affected the accuracy or reliability of the test results or the fairness of the procedure.

S.C.Code Ann. § 56–5–2950(J) (2013).

shown, rescission of the motorist's administrative suspension is not automatic."

The ALC explained that "test results cannot be excluded simply because an arresting officer failed to testify that a specific provision in § 56–5–2950 was followed, *unless* the motorist makes a motion during the hearing requesting the OMVH hearing officer to review such provision *and* the hearing officer determines that law enforcement's failure to comply with the provision materially affected the accuracy or reliability of the test[ ] results or the fairness of the testing procedure." Applying this reasoning, the ALC concluded that Petitioner, by waiting until his closing argument to raise the issue of compliance with the provisions of section 56–5–2950, deprived the Department of a sufficient opportunity to respond. Ultimately, the ALC found Officer Wilson's failure to testify specifically that he performed the simulator test before administering the breathalyzer test did not require rescission of the license suspension, as Petitioner failed to timely raise the issue.

Petitioner appealed. In an unpublished opinion, the court of appeals summarily affirmed the ALC's reinstatement of Petitioner's license suspension. *S.C. Dep't of Motor Vehicles v. Brown*, No. 2011–UP–130 (S.C.Ct.App. Mar. 29, 2011). In so ruling, the court found Petitioner failed to properly preserve his challenge as to whether the Department presented evidence that law enforcement administered the breath test and obtained the sample in accordance with section 56–5–2950 because he did not contemporaneously object to Officer Wilson's testimony. The court explained that Officer Wilson testified the "machine was working properly in general" and further noted "the test results were admitted without objection."

This Court granted Petitioner's petition for a writ of certiorari to review the decision of the court of appeals.

### ISSUE

Whether section 56–5–2950(e) automatically excludes breathalyzer test evidence when the Department does not specifically adduce testimony that law enforcement followed each procedure required by 56–5–2950(a)?

## ANALYSIS

As stated, *supra*, section 56–5–2950(e) provides:

Policies, procedures, and regulations promulgated by SLED may be reviewed by the trial judge or hearing officer **on motion of either party.** The failure to follow any of these policies, procedures, and regulations, **or the provisions of this section,** shall result in the exclusion from evidence any test[ ] results, if the trial judge or hearing officer finds that such failure materially affected the accuracy or reliability of the test results or the fairness of the testing procedure.

S.C.Code Ann. § 56–5–2950(e) (2006) (emphasis added). However, it was not until closing arguments that Petitioner moved to rescind his license suspension, claiming the Department failed to produce evidence that the test was administered in accordance with the procedures set forth in section 56–5–2950(a) due to its failure to perform the simulator test.

 We agree with the ALC that, in order for the Hearing Officer to consider the "provisions" of section 56–5–2950, a motion must be made for their consideration. *See* S.C.Code Ann. § 56–5–2950(e) (2006) ("Policies, procedures, and regulations promulgated by SLED may be reviewed by the trial judge or hearing officer **on motion of either party.**"); S.C Code Ann. § 56–5–2950(J) (2013) (same). Here, no such motion was made by Petitioner until *after* the close of evidence in this case. At its heart, this is a question of the reliability of the Department's evidence that Petitioner blew a 0.17% on the breath test. If no motion is made at the appropriate time—*when the State seeks to introduce that evidence*—then the Petitioner has waived his opportunity to challenge its reliability.

In our opinion, this is the only reading of subsection (e) that gives effect to the language that the failure to follow the provisions of section 56–5–2950 "shall result in the *exclusion from evidence* " of the test results upon a finding that that the failure to follow the provisions "materially affected the accuracy or reliability of the test results or the fairness of the testing procedure." S.C.Code Ann. § 56–5–2950(e) (2006) (emphasis added); *see also* S.C.Code Ann. § 56–5–2950(J) (2013). Here, the Department was not provided with the opportunity to

meaningfully respond to allegations that its tests results were not reliable.[10]

We therefore agree with the ALC's holding that the "test results cannot be excluded simply because an arresting officer failed to testify that a specific provision in § 56–5–2950 was followed, *unless* the motorist makes a motion during the hearing requesting the OMVH hearing officer to review such provision *and* the hearing officer determines that law enforcement's failure to comply with the provision materially affected the accuracy or reliability of the test[ ] results or the fairness of the testing procedure."

### CONCLUSION

For the foregoing reasons, we affirm the court of appeals' decision.

KITTREDGE, J., concurs. PLEICONES, J., concurring in a separate opinion. BEATTY, J., dissenting in a separate opinion in which HEARN, J., concurs.

Justice PLEICONES.

I concur in the majority's decision to affirm the Court of Appeals. I write separately, however, to emphasize two points. First, it is patent that an objection to the sufficiency of the evidence made in a closing argument comes too late. Moreover, to the extent Petitioner's complaint is that the officer's testimony relating the Data Master results should not have been admitted, Petitioner waived his right to make that argument when he failed to object to the testimony when it was offered. *See State v. Burton*, 356 S.C. 259, 589 S.E.2d 6 (2003). The ALC properly found Petitioner did not preserve

---

**10.** Regardless, we believe that there was sufficient evidence offered by the Department that the DataMaster machine was in proper working condition, as Officer Wilson testified that the machine "was functioning properly." Moreover, he testified that Petitioner's alcohol concentration registered 0.15% or greater on the breath test. Petitioner failed to contemporaneously object to either the testimony or the reliability of the results offered at trial. Therefore, we find that there is evidence in the record to support a finding that the test results were reliable. *See, e.g., State v. Hoffman*, 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) ("A contemporaneous objection is required to properly preserve an error for appellate review.") (citation omitted).

his objection to the breathalyzer results. Second, I adhere to my view that on certiorari to the Court of Appeals, we review only that decision for errors of law. *Lewis v. Lewis*, 392 S.C. 381, 709 S.E.2d 650 (2011) (Pleicones, J., dissenting). Here, the Court of Appeals' appellate review of the ALC order was confined to a consideration whether it was arbitrary, otherwise an abuse of discretion, unsupported by substantial evidence, or affected by an error of law. *E.g. South Carolina Dep't of Motor Vehicles v. Holtzclaw*, 382 S.C. 344, 675 S.E.2d 756 (Ct.App.2009). Since the Court of Appeals committed no error of law in its review of the ALC order, I concur in the majority's decision.

Justice BEATTY.

I dissent as I believe Petitioner properly preserved a valid challenge to the sufficiency of the Department's case. Furthermore, I believe our standard of review mandates a reversal as there is evidence to support the Hearing Officer's finding that the Department failed to present a *prima facie* case to suspend Petitioner's license under section 56–5–2951. Accordingly, I would reverse the decision of the Court of Appeals and reinstate the Hearing Officer's order rescinding Petitioner's license suspension.

## I. Discussion

### A. Error Preservation

As an initial matter, I disagree with the majority's decision to affirm the ALC's order on error preservation grounds as Petitioner's challenge to the Department's case was both timely and sufficient.

Throughout these proceedings, Petitioner has consistently challenged the reliability of the breath test results on the ground Officer Wilson failed to present evidence that the test was administered and the sample obtained in accordance with section 56–5–2950. Although the Hearing Officer did not expressly rule on the Department's failure to present evidence as to the simulator solution test, he found the Department failed to satisfy its burden of proof as it did not present evidence that "[Officer Wilson] complied with all requirements while administering the breath test" as mandated by section

56–5–2951. Because the Hearing Officer ruled in favor of Petitioner, he implicitly found the testimony regarding the breath test results was unreliable. Accordingly, the issue was raised to and ruled upon by the Hearing Officer. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). In view of this favorable ruling, it was not necessary for Petitioner to request additional conclusions of law from the Hearing Officer in order to preserve his issues for appellate review. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000) ("It would be inefficient and pointless to require a respondent to return to the judge and ask for a ruling on other arguments to preserve them for appellate review."). Furthermore, Petitioner raised this issue as an additional sustaining ground in his brief to the ALC.

Finally, as will be more thoroughly discussed, Petitioner's challenge to the reliability of the test results was timely as he was not objecting to the admissibility of Officer Wilson's testimony but, rather, whether the Department had met its burden of proof in its case-in-chief. Unlike the majority, I do not believe Petitioner was required to raise any challenge until the Department presented a *prima facie* case to support the license suspension. Thus, I would find the Court of Appeals erred in basing its decision on error preservation grounds as it failed to appreciate Petitioner's fundamental contention. Finding the issue properly preserved, I turn to a review of Petitioner's substantive challenges to the ALC's order.

### B. Review of the ALC's Order

"The [OMVH] is authorized to hear contested cases from the Department." *S.C. Dep't of Motor Vehicles v. McCarson,* 391 S.C. 136, 144, 705 S.E.2d 425, 429 (2011) (citing S.C.Code Ann. § 1–23–660 (Supp.2009) and *S.C. Dep't of Motor Vehicles v. Holtzclaw,* 382 S.C. 344, 347, 675 S.E.2d 756, 757–58 (Ct. App.2009)). "Thus, the [OMVH] is an agency under the Administrative Procedures Act (APA)." *Id.* "Accordingly, appeals from [the OMVH] must be taken to the ALC." *Id.*

When reviewing the decision of the ALC, an appellate court's standard of review is governed by section 1–23–610 of the South Carolina Code. S.C.Code Ann. § 1–23–610 (Supp. 2012). Under section 1–23–610(B) of the APA, an appellate court may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the appealed decision if the appellant's substantive rights have suffered prejudice because the decision is: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by other error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. § 1–23–610(B).

Although it is clear the Department has the burden of proof in a license suspension proceeding,[11] the positions of the parties diverge with respect to what the Department must prove to establish a *prima facie* case and when a motorist must challenge the sufficiency of the Department's case. In ruling in favor of the Department, I believe the ALC's decision was controlled by errors of law.

Initially, I believe the ALC and the majority err in their reliance on section 56–5–2950(e) as that provision applies only when a party is raising a substantive challenge to the policies, procedures, and regulations promulgated by SLED. S.C.Code Ann. § 56–5–2950(e) (2006) ("Policies, procedures, and regulations promulgated by SLED may be reviewed by the trial judge or hearing officer on motion of either party."). Here, contrary to the findings of the majority, Petitioner made no such challenge. Instead, he was asserting that the breath test results were unreliable because there was no evidence that Officer Wilson complied with the procedures set forth in section 56–5–2950.

Even if a motion was necessary under section 56–5–2950(e) for the Hearing Officer to assess the reliability of the breath

---

11. Notably, section 56–5–2951(F) now states, "The Department of Motor Vehicles and the arresting officer shall have the burden of proof in contested case hearings conducted pursuant to this section." S.C.Code Ann. § 56–5–2951(F) (Supp.2012).

test results as advocated by the majority, Petitioner's closing argument was sufficient to implicate this provision as his motion was akin to a directed verdict motion wherein he questioned whether the Department followed the procedures of section 56–5–2950.[12] *See* S.C.Code Ann. § 56–5–2950(e) (2006) ("The failure to follow any of these policies, procedures, and regulations, or the provisions of this section, shall result in the exclusion from evidence any test[ ] results, if the trial judge or hearing officer finds that such failure materially affected the accuracy or reliability of the test[ ] results or the fairness of the testing procedure."); *State v. Long,* 363 S.C. 360, 363, 610 S.E.2d 809, 811 (2005) (analyzing section 56–5–2950 and stating, "Part (e) provides for judicial or administrative review of regulations, and for the exclusion of evidence if these regulations are not complied with").

Having found the sufficiency of the Department's case was proper for the Hearing Officer's determination, I next assess what the Department needed to present to set forth a *prima facie* case under section 56–5–2951 as that section outlines "several statutory prerequisites that must be established before a Hearing Officer suspends a citizen's driver's license following an arrest for DUI." *McCarson,* 391 S.C. at 149, 705 S.E.2d at 431. In doing so, I would note the crucial distinctions between a license suspension hearing and a trial for the underlying DUI charge. As our appellate courts have explained:

> [T]he question before the hearing officer was not whether the state had proved its case, but whether the arresting officer had probable cause to believe [the driver] had com-

---

12. In contrast, the majority maintains that a motion to exclude the breath test results due to the Department's failure to comply with the statutory requirements of section 56–5–2950 must be made at the precise time the results are offered. Although a contemporaneous objection is generally raised at the time evidence is offered, this is not the situation presented in the instant case. Here, Petitioner was not objecting to Officer Wilson's statement regarding the breath test results. Rather, Petitioner was challenging whether the Department presented sufficient evidence to satisfy the statutory requirements of section 56–5–2950 to sustain the suspension of his license. Thus, similar to a defense motion for a directed verdict, Petitioner could not move to dismiss the Department's case based on the insufficiency of the evidence until the Department rested its case before the Hearing Officer. Accordingly, Petitioner's motion was both timely and procedurally proper.

mitted the offense of driving under the influence. This is *not* a trial in regard to the guilt or innocence of the defendant on a DUI charge. **Rather, the gravamen of the administrative hearing is a determination of the efficacy and applicability of the implied consent law. The query posited to the administrative hearing officer is: did the person violate the implied consent law.**

*S.C. Dep't of Motor Vehicles v. Nelson,* 364 S.C. 514, 525, 613 S.E.2d 544, 550 (Ct.App.2005) (citation omitted) (second emphasis added).

Here, Petitioner's fundamental challenge was to the reliability of the breath test results. In section 56–5–2951(F)(4), the General Assembly has identified, in the conjunctive, four foundational requirements for breath test results. Petitioner claimed the Department failed to offer evidence as to subsection (F)(4)(c), which requires that "tests administered and samples obtained were conducted pursuant to Section 56–5–2950." Specifically, whether a simulator test was performed before Officer Wilson administered the actual test.

As noted by the Hearing Officer, the Department did not introduce the actual test results but relied exclusively on Officer Wilson's scant testimony. In the absence of other evidence, the Hearing Officer rejected the 0.17 reading claimed by Officer Wilson as there was no way to determine the accuracy and reliability of the blood-alcohol analysis. *See State v. Huntley,* 349 S.C. 1, 5, 562 S.E.2d 472, 474 (2002) ("The purpose of a simulator test is to ensure the breathalyzer machine produces an accurate, reliable breath-alcohol reading, and ultimately, an accurate blood-alcohol analysis.").

I would decline to reverse this conclusion as the Hearing Officer is the ultimate fact finder in a license suspension proceeding. *See White v. S.C. Dep't of Highways & Pub. Transp.,* 278 S.C. 603, 606, 299 S.E.2d 852, 853 (1983) (finding that factual determinations in license suspension proceeding was the "work of the administrative hearing officer" and should not be reversed by the circuit court or the appellate court "if there is substantial evidence to support the hearing officer's findings and conclusions").[13]

---

13. In direct contravention of our standard of review, the majority would reverse the findings of the Hearing Officer. Specifically, the

Without reliable evidence as to the amount of Petitioner's blood alcohol concentration, the Department failed to establish a *prima facie* case under section 56–5–2951 to sustain the license suspension. Accordingly, it was not necessary for Petitioner to rebut the Department's evidence as the burden of production never shifted to Petitioner.[14] *See Lawson v. Dir. of Revenue*, 145 S.W.3d 443, 445–46 (Mo.Ct.App.2004) (holding that evidence did not support suspension of driver's license and stating, "The Director has the burden to present a *prima facie* case. If that threshold is met, the driver is entitled to present evidence in an attempt to rebut the Director's *prima facie* case. While the burden of production shifts to the driver when the Director establishes a *prima facie* case, the burden of persuasion remains with the Director throughout the proceedings" (citation omitted)).

## II. Conclusion

In my opinion, the majority and the courts below misconstrue Petitioner's challenge as one involving the admissibility of evidence. Instead, Petitioner was challenging the sufficiency of the Department's evidence rather than the admissibility of the 0.17 reading. Stated another way, Petitioner was

---

majority takes its own view of the evidence and finds that "there was sufficient evidence offered by the Department that the DataMaster machine was in proper working condition." Unlike the majority, I employ our standard of review and conclude that there was substantial evidence to support the Hearing Officer's factual findings and conclusions.

14. The Department cites this Court's decision in *State v. Parker*, 271 S.C. 159, 245 S.E.2d 904 (1978), for the proposition that Officer Wilson's testimony that "the machine was functioning properly" was sufficient to sustain the license suspension. The Department maintains this uncontroverted testimony constituted *prima facie* evidence the breathalyzer test was administered by a qualified person in a proper manner as required by section 56–5–2950(a). I believe the Department's reliance on *Parker* is misplaced as that case was decided prior to the enactment of the statute at issue and before this Court's decision in *McCarson*. Furthermore, in *Parker*, this Court addressed the proper foundation for the introduction of breath test results in a prosecution for DUI rather than a license suspension. *Parker*, 271 S.C. at 164, 245 S.E.2d at 908; *see also State v. Cuccia*, 353 S.C. 430, 578 S.E.2d 45 (Ct.App.2003) (holding that revocation of a driver's license following a DUI arrest is a civil sanction and not a criminal penalty for double jeopardy purposes).

arguing the Department failed to present a *prima facie* case as to the statutory prerequisites necessary to suspend his license under section 56–5–2951. Thus, whether Petitioner posited a contemporaneous objection to Officer Wilson's testimony was not determinative.

As to the merits of Petitioner's appeal, I would hold the ALC and, in turn, the Court of Appeals erred in reversing the Hearing Officer's order. In rescinding Petitioner's license suspension, the Hearing Officer determined that the Department failed to present a *prima facie* case to suspend Petitioner's license under section 56–5–2951. Specifically, the Hearing Officer rejected the blood alcohol reading attested to by Officer Wilson as there was no other evidence offered to ensure the accuracy and reliability of this reading. Because the Hearing Officer was the fact finder in this proceeding, I would decline to reverse his conclusion as there is substantial evidence to support his ruling. I emphasize that this decision would have no bearing on the viability of the underlying DUI charge and would not preclude the suspension of Brown's license if he were convicted.

Based on the foregoing, I would reverse the decision of the Court of Appeals and reinstate the Hearing Officer's order rescinding Petitioner's license suspension.

HEARN, J., concurs.